Leslie LANDRUM, Special Administratrix of the Estate of Roy Lee Landrum, Deceased, Appellant,

v.

John MOATS and Robert J. Rockwell, Appellees.

No. 77–1656.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 11, 1978.

Decided May 30, 1978.

Charles O. Forrest, Omaha, Neb., argued and on brief, for appellant.

Timothy M. Kenny, Asst. City Atty., Omaha, Neb. (argued), and James E. Fellows, Omaha, Neb., on brief, for appellees.

Before BRIGHT, STEPHENSON, and HENLEY, Circuit Judges.

BRIGHT, Circuit Judge.

Leslie Landrum, special administratrix of the estate of her son, Roy Lee Landrum, brought a civil rights action under 42 U.S.C. § 1983 (1970) and a common law tort action against Omaha police officers John Moats and Robert Rockwell seeking damages for the shooting death of her son as he fled from the scene of a burglary. The jury found for·the defendants, and the district court denied post-trial motions for judgment notwithstanding the verdict or a new trial. Plaintiff then brought this appeal asserting primarily that the district court erred in its rulings on these post-trial motions. In support of the verdict, appellees Moats and Rockwell contend that under an

appropriate construction of Nebraska law they were not liable as a matter of law.

Based on our review of the record, we affirm the order of the district court denying judgment n.o.v. We reverse the order denying a new trial, however, and remand to the district court for a new trial.

## I. Factual Background.

On August 15, 1975, at 2:40 a. m., a police dispatcher informed officers Rockwell and Moats that a burglary was in progress at a service station located at 4501 Florence Boulevard, Omaha, Nebraska. The officers proceeded immediately to the address. As they entered the driveway of the station, they saw the decedent, Roy Lee Landrum, exit through a window on the north side of the station, jumping onto some tires and debris and then down to the ground. Both officers leaped out of the car, and officer Rockwell hollered: "Stop, police."

Landrum apparently heard the shout and crouched down, looking directly at the officers. He then turned to the east and ran. Officer Moats fired a single shot at him while standing by the police car. The shot missed, and both officers chased Landrum, shouting at him to halt, until they reached the northeast corner of the station. There they stopped and began firing at Landrum as he ran away, each firing two shots almost simultaneously. One of the bullets struck Landrum in the back, killing him.[1]

No weapons were found on Landrum. At trial, both officers testified that they had no reason to believe that Landrum was a threat to their safety or to anyone else's. The officers justified the use of deadly force on the grounds that they believed that Landrum would escape unless they shot him. In doing so, both relied on a directive

of the Omaha police department, effective at the time of the incident, that among other things permitted a police officer to use his firearm in the performance of his duty to

> effect the arrest or capture, or prevent the escape or rescue, of a person whom the officer knows or has reasonable grounds to believe has committed a felony, when all other means have failed.

## II. Subject Matter Jurisdiction.

■ Although neither party has raised the jurisdictional issue and the district court assumed jurisdiction, it is well settled that "[a]n appellate federal court must satisfy itself not only of its own jurisdiction, but also of that of the lower courts in a cause under review." *Mitchell v. Maurer*, 293 U.S. 237, 244, 55 S.Ct. 162, 165, 79 L.Ed. 338 (1934) (footnote omitted). Therefore, we deem it appropriate to discuss the federal jurisdictional basis for this action.

■ Shortly after the death of her son, on November 7, 1975, Leslie Landrum filed the present action in the United States District Court for the Eastern District of Nebraska.[2] In count I of her complaint, she contended that officers Moats and Rockwell had deprived her son of constitutional rights, violations of which are actionable under 42 U.S.C. § 1983:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

1. The parties all agree that either officer Moats or officer Rockwell fired the fatal shot, but whose bullet killed Landrum was not conclusively established at trial.

2. The issue of standing was not discussed by either party, but because it is an element of the article III requirement of a case or controversy a brief comment is in order. In proceedings to vindicate civil rights, 42 U.S.C. § 1988 (1970)

authorizes reference to state law for questions left unanswered by the applicable federal law. Because § 1983 does not mention standing, we must turn to Nebraska law in order to ascertain whether Leslie Landrum, the decedent's mother, has standing to prosecute this action. We hold that she does. *See* Neb.Rev.Stat. § 30-810 (1975 reissue); *cf. Mattis v. Schnarr*, 502 F.2d 588, 593 (8th Cir. 1974).

Count II of the complaint was a pendent state tort claim for assault and battery.

In order for the court to have subject matter jurisdiction, the pleading must, on its face, state a cognizable claim for relief. In a section 1983 action, the plaintiff must be able to point to a specific, articulable constitutional right that is transgressed.

In the present case, plaintiff-appellant asserts violations of fourth, fifth, sixth, eighth, and fourteenth amendment rights:

> That the acts of the Defendants, John Moats and Robert J. Rockwell, under color of law and under color of their authority as police officers of the City of Omaha, as hereinabove set out, deprived Roy Lee Landrum of his rights, privileges and immunities guaranteed to him as a citizen of the United States, by Amendments 4, 5, 6, 8 and 14 of the Constitution of the United States, to Plaintiff's damage in the sum of $1,000,000.00, and $3,000,-000.00 punitive damages.

Although the complaint did not specify either the nature of the right violated or exactly which constitutional provision protected it and how, each of these amendments could be plausibly construed to forbid the use of deadly force on a fleeing felon who has not used violence in the commission of the felony and who poses no threat to anyone.[3]

Plaintiff-appellant's vagueness is somewhat understandable, for while this court has entertained similar section 1983 actions in the past and assumed subject matter jurisdiction,[4] our sole decision clarifying the precise nature of our jurisdictional power was vacated on procedural grounds by the Supreme Court, and thus no longer stands as binding precedent. *Mattis v. Schnarr*, 547 F.2d 1007 (8th Cir. 1976) (*Mattis II*) (*en banc*), *vacated as moot sub nom. Ashcroft v. Mattis*, 431 U.S. 171, 97 S.Ct. 1739, 52 L.Ed.2d 219 (1977). *See also Mattis v. Schnarr*, 502 F.2d 588 (8th Cir. 1974) (*Mattis I*) (three-judge panel). In *Mattis*, a case with facts nearly identical to this case,[5] this court ruled unconstitutional a Missouri statute that permitted the police to use deadly force to apprehend a fleeing felon who has used no violence in the commission of the felony and who does not threaten the lives of either the arresting officers or others. Prior to its holding on the merits, the court assumed jurisdiction by first declaring that an individual has a fundamental right to life, and then finding that right protected against unreasonable or unlawful taking by the procedural due process safeguards of the fifth and fourteenth amendments. 547 F.2d at 1017–20. The court declined, however, to find additional constitutional causes of actions implicit in the case based on the

---

3. Each of these possible constitutional bases, with the exception of the sixth amendment, is thoroughly canvassed in Comment, *Deadly Force to Arrest: Triggering Constitutional Review*, 11 Harv.C.R.–C.L.L.Rev. 361, 371–88 (1976).

4. *See Russ v. Ratliff*, 538 F.2d 799 (8th Cir. 1976), *cert. denied*, 429 U.S. 1041, 97 S.Ct. 740, 50 L.Ed.2d 753 (1977). In *Russ*, a case in which the police shot to death a traffic offender in custody, we held that the use of excessive force against a prisoner stated a cause of action under section 1983. We did not, however, specify the exact basis for jurisdiction over that cause of action.

5. Michael Mattis, age eighteen, and Thomas Rolf, age seventeen, were discovered in the office of a golf driving range at approximately 1:20 A.M. by police officer, Richard Schnarr. Shortly thereafter, the two boys left the office by climbing out through the back window. Schnarr shouted at the boys to halt. They ran in different directions. Schnarr then shouted, "Halt or I'll shoot" two times. When the boys failed to stop, he fired one shot into the air and one shot at Rolf. Meanwhile, Officer Robert Marek, who had arrived on the scene, ran to intercept the boys. He collided with Mattis as he came around the corner of the building. Both fell to the pavement. Marek grabbed Mattis by the leg. Mattis broke away. Marek ran after him. Marek was losing ground. He shouted, "Stop or I'll shoot." Mattis did not stop. Marek, believing it was necessary to take further action to prevent Mattis's escape, fired one shot in the direction of Mattis and killed him. Both officers believed that the use of their guns was reasonably necessary to effect an arrest and was authorized by valid Missouri statutes.

[*Mattis v. Schnarr*, 547 F.2d 1007, 1009 (8th Cir. 1976).]

eighth amendment cruel and unusual punishment clause and the fourteenth amendment equal protection clause. *Id.* at 1020 n. 32.

■■ Despite the vagueness of the complaint in this case, we find that it states a cause of action under section 1983 conferring jurisdiction on this court. In particular, we readopt the jurisdictional holding in *Mattis II*: The right to life is fundamental and is protected against unreasonable or unlawful takings by the procedural due process safeguards of the fifth and fourteenth amendments. In view of this holding, we need not consider whether the plaintiff Leslie Landrum has also asserted cognizable claims under the fourth, sixth, and eighth amendments. We note, too, that the circumstances here are distinguishable from *Mattis*. In *Mattis* the police officers relied upon a Missouri statute authorizing their use of deadly force. Here, as we discuss in part III A, the Nebraska statute in question restricted the police officers' privilege of using deadly force.[6]

III. *The Propriety of Judgment N. O. V.*

As stated above, the parties essentially agree on the important facts of the case. Officers Moats and Rockwell conceded at trial that they had no reason to believe that the decedent, a burglary suspect, had used violence in the commission of the burglary or that he posed a threat to anyone's safety.[7] Both testified that they shot at the decedent to prevent his escape from arrest. For her part, Leslie Landrum does not dispute the existence of probable cause to arrest her son for a felony.

Given the above facts, Landrum proceeded under two alternative theories in prosecuting her section 1983 claim: (1) the shooting death of her son was a per se unreasonable taking of her son's life; or (2) even if not per se unreasonable, it was unreasonable given the circumstances. In addition, she argues here that the good faith defense normally provided police officers in section 1983 actions against them[8] was unavailable to these defendants because it had been expressly preempted by Nebraska law. We consider each of these points separately below.

A.

In support of her conclusion that the use of deadly force[9] against a fleeing, nonviolent felon is per se unreasonable, Leslie Landrum relies on this court's interpretation of the fourteenth amendment due process clause in *Mattis II*,[10] and section 28–839

---

6. The holding of *Mattis II* on the merits was that statutes that authorize police officers to use deadly force against fleeing nonviolent felons are unreasonable per se and thus unconstitutional. As such, it is not implicated by this case, which is a challenge to the reasonableness of individual police action rather than to a legislative grant of power to use deadly force under the circumstances. *See* part III *infra.*

7. Nevertheless, in their brief they argue as follows:

For while Landrum brandished no weapons, nor physically confronted the Defendants, the situation itself represented a threat to *their personal safety.* * * * [T]he circumstances as a whole—flight into a darkened night in a black neighborhood, concern whether the felon was accompanied by another party—were factors properly causing Defendants to be apprehensive for their personal safety.

We reject this argument. Landrum was shot in the back as he fled. No evidence even suggests the presence of an accomplice or of any threat to the officers' safety or that of anyone else.

8. *See, e. g., Procunier v. Navarette*, 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978); *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967).

9. Deadly force is defined in section 28–833(3) of the Reissue of Revised Statutes of Nebraska, 1943:

Deadly force shall mean force which the actor uses with the purpose of causing or which he knows to create a substantial risk of causing death or serious bodily harm. Purposely firing a firearm in the direction of another person or at a vehicle in which another person is believed to be constitutes deadly force.

10. The following language in *Mattis II* is particularly relevant:

The police officer cannot be constitutionally vested with the power and authority to kill any and all escaping felons, including the thief who steals an ear of corn, as well as one who kills and ravishes at will. For the reasons we have outlined, the officer is required

of the Reissue of Revised Statutes of Nebraska, 1943.

We consider the statutory claim first. Section 28–839 provides, in relevant part, that:

> 28–839. *Use of force in law enforcement.* (1) Subject to the provisions of this section and of section 28–841, the use of force upon or toward the person of another is justifiable when the actor is making or assisting in making an arrest and the actor believes that such force is immediately necessary to effect a lawful arrest.
>
> (2) The use of force is not justifiable under this section unless:
>
> (a) The actor makes known the purpose of the arrest or believes that it is otherwise known by or cannot reasonably be made known to the person to be arrested; and
>
> (b) When the arrest is made under a warrant, the warrant is valid or believed by the actor to be valid.
>
> (3) The use of deadly force is not justifiable under this section unless:
>
> (a) The arrest is for a felony;
>
> (b) Such person effecting the arrest is authorized to act as a peace officer or is assisting a person whom he believes to be authorized to act as a peace officer;
>
> (c) The actor believes that the force employed creates no substantial risk of injury to innocent persons; and
>
> (d) The actor believes that:
>
> (i) The crime for which the arrest is made involved conduct including the use or threatened use of deadly force; or
>
> (ii) There is a substantial risk that the person to be arrested will cause death or serious bodily harm if his apprehension is delayed.

Plainly, one of the prerequisites to the use of deadly force was not met in this case. Neither officer Moats nor Rockwell believed, as required by subsection 3(d), that the crime for which the arrest was made involved the use or threatened use of deadly force or that a substantial risk existed that the decedent would cause death or serious bodily harm if his apprehension were delayed.[11] Thus it appears that Nebraska has made the use of deadly force against fleeing nonviolent felons unreasonable per se.

In response, however, officers Moats and Rockwell contend that the provisions of section 28–839 do not apply to law enforcement officers. They rely on section 28–833 of the Nebraska Code, which defines the terms used in sections 28–833 to 28–843, including the term "actor." That term, used in the section 28–839 provision concerning use of force in law enforcement, apparently excludes Nebraska law enforcement officers from the requirements of the subsequent provisions:

> . 28–833. *Terms, defined.* As used in sections 28–833 to 28–843, unless the context otherwise requires:
>
> *　　*　　*　　*　　*　　*
>
> (4) Actor shall mean any person who uses force in such a manner as to attempt to invoke the privileges and immunities afforded him by sections 28–833 to 28–843, *except any duly authorized law enforcement officer of the State of Nebraska or its political subdivisions* * * *. [Emphasis added.]

■ As is evident, a direct contradiction exists between the definition of "actor," which excludes law enforcement officers, and section 28–839, which seems to apply to law enforcement officers although it refers only to "actors." The district judge considered that issue and ruled that section

---

to use a reasonable and informed professional judgment, remaining constantly aware that death is the ultimate weapon of last resort, to be employed only in situations presenting the gravest threat to either the officer or the public at large. Thus, we have no alternative but to find V.A.M.S. §§ 559.040 and 544.190 unconstitutional in that they permit police

officers to use deadly force to apprehend a fleeing felon who has used no violence in the commission of the felony and who does not threaten the lives of either the arresting officers or others. [547 F.2d at 1020 (footnotes omitted).]

**11.** *See* note 7 *supra.*

28–839 does apply to police officers, relying on the legislative history and terms of section 28–833 through 28–843, which were intended to adopt the Model Penal Code provisions on the use of force.[12] Based on our review of the same sources,[13] we agree with the district court.

 Under these circumstances plaintiff Leslie Landrum established that the police officers had exercised unreasonable force as a matter of law.

Because we have determined that appellant established the use of excessive force as a matter of law, we need not consider her second theory of recovery under section 1983: that if not unreasonable per se, the force used by officers Rockwell and Moats was unreasonable under the circumstances.

**B.**

 Our ruling that officers Rockwell and Moats used excessive force as a matter of law does not necessarily mean that appellant was entitled to a directed verdict at the close of all evidence, thus authorizing judgment n. o. v. In section 1983 actions for damages, defendants are entitled to a qualified immunity from liability based on good faith belief in the proprie-ty of their actions and reasonable grounds[14] for that belief. *Procunier v. Navarette*, 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978); *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

 Thus, for example, "[w]hen a court evaluates police conduct relating to an arrest its guideline is 'good faith and probable cause.'" *Scheuer v. Rhodes, supra*, 416 U.S. at 245, 94 S.Ct. at 1691, *quoting Pierson v. Ray*, 386 U.S. 547, 557, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). A similar guideline must be applied in assessing the propriety of force used by the police to effectuate an arrest. If police officers (1) believe that a certain amount of force is necessary to make an arrest, (2) believe that use of that amount of force is lawful under the circumstances, and (3) have reasonable grounds for each of the foregoing beliefs, then they are entitled to the defense of good faith even if the use of force turns out, *ex post*, to have been illegal or excessive. *See Procunier v. Navarette, supra*; *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975); *Scheuer v. Rhodes, supra*; *Pierson v. Ray, supra*.

 The defense of good faith is not, as plaintiff-appellant asserts, inapplicable to an action based on excessive force and

---

**12.** The ruling came in the court's denial of a motion to dismiss by the police officer. The trial court wrote in part:

The commentary to Section 3.07 of the Model Penal Code clearly indicates that this section is intended to apply to law enforcement officials. *See* Model Penal Code, tentative draft 8, 55 63 (American Law Institute, 1958). In addition the specific language of Section 28 839 which provides in part:

The use of deadly force is not justifiable under this section unless . . . . (b) such person effecting the arrest is authorized to act as a peace officer. . . . .

mandates the conclusion that this section applies *to* law enforcement officials notwithstanding the general exemption from Sections 28 833 to 28 843, contained in the definitions.

**13.** In *Mattis v. Schnarr*, 547 F.2d 1007, 1013 (8th Cir. 1976), *vacated as moot sub nom. Ashcroft v. Mattis*, 431 U.S. 171, 97 S.Ct. 1739, 52 L.Ed.2d 219 (1977), we commented on section 28 839 and concluded that it represented the Model Penal Code approach, which permits the use of deadly force only when the crime for which the arrest is made involves conduct including use or threatened use of deadly force or when there is a substantial risk that the person to be arrested will cause death or serious bodily harm if his apprehension is delayed. [Footnote omitted.]

**14.** The paradigm of "reasonable grounds" for a good faith belief in the propriety of official action is reliance on a state statute later declared unconstitutional. *See, e. g., Pierson v. Ray*, 386 U.S. 547, 556–57, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). Reliance on less formal state provisions may also be reasonable, *Eslinger v. Thomas*, 476 F.2d 225, 229 (4th Cir. 1974) (longstanding custom of the South Carolina Senate); *Claybrone v. Thompson*, 368 F.Supp. 324 (M.D.Ala.1973) (standard operating procedures of prison), and in our view police officers may usually rely on standard operating procedures contained in their police manuals.

**1328** 

assault and battery.[15] Nor is it preempted by Nebraska law.[16]

Therefore, in defense of this action for damages, police officers Moats and

**15.** In the instruction conference at trial, counsel for plaintiff-appellant objected to the inclusion of an instruction on the good faith defense:

> MR. FORREST: The plaintiff would object to Instruction No. 11 in that it permits the defendants the defense of reasonableness in their belief in the valid state law, and there is no question raised by defense counsel at any time during this trial that the law of the state was invalid. The law has existed prior to the date of the incident and I do not feel that the defense of reasonable belief is applicable to this case. Also, with reference to the good faith, the good faith defense is not, in my opinion, applicable to a case involving excessive force and assault and battery. It pertains to a case involving false arrest, malicious prosecution, where the issue of probable cause arises. That issue is in no way in plaintiff's view present in this case. There is no claim of false arrest, no claim of malicious prosecution involved. Common law, the defense of reasonableness, belief, and good faith, were not available to the torts of assault and battery and we would cite *Monroe vs. Pape*. Plaintiff objects to Instruction 11 for those reasons.

The trial judge overruled the objection. In this appeal, plaintiff-appellant reasserts her objection to the instruction, again citing *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), which she claims noted that, at common law, the defenses of reasonable belief and good faith were not available for the tort of assault and battery. *Monroe* decided no question of immunity, however, and we question plaintiff-appellant's reliance on it. In *Monroe*, the

> police officers did not choose to * * * defend the case on the hope that they could convince a jury that they believed in good faith that it was their duty to assault Monroe and his family * * *. [T]hey sought dismissal * * * contending * * * that their activities were so plainly illegal under state law that they did not act [under color of state law] * * * as required by § 1983. [*Pierson v. Ray*, 386 U.S. 547, 556, 87 S.Ct. 1213, 1219, 18 L.Ed.2d 288 (1967).]

In our view, section 1983 provides a federal remedy for the redress of wrongs done under the color of state law. As such, state law or the prevailing common law view is no longer decisive as to the availability of a § 1983 defense: that view must be considered in light of the policies and purposes of the § 1983 action to determine whether importation of the defense, or allowance of a defense where the common law provides none, is appropriate. *See, e. g., Imbler v. Pachtman*, 424 U.S. 409, 424–29 [96 S.Ct. 984, 47 L.Ed.2d 128] (1976); *Wood v. Strickland*, 420 U.S. 308, 318–22 [95 S.Ct. 992, 43 L.Ed.2d 214] (1975); *Scheuer v. Rhodes*, 416 U.S.

232, 238–49 [94 S.Ct. 1683, 40 L.Ed.2d 90] (1974). *Compare Whirl v. Kern*, 407 F.2d 781, 790–92 (5th Cir.), *cert. denied*, 396 U.S. 901 [90 S.Ct. 210, 24 L.Ed.2d 177] (1969) (good faith no defense to false imprisonment at common law, so no defense under § 1983), *with Bryan v. Jones*, 530 F.2d 1210 (5th Cir. 1976) (en banc) (overruling *Whirl* and holding good faith defense generally available in § 1983 damage actions). *Developments in the Law-Section 1983 and Federalism*, 90 Harv.L.Rev. 1133, 1211 n. 126 (1977). *Contra, Eslinger v. Thomas*, 476 F.2d 225, 229 (4th Cir. 1973).

**16.** Plaintiff-appellant relies on section 28–841 of the Reissue of Nebraska Revised Statutes, a provision that she claims preempts the application of good faith defense to this case:

> 28–841. *Mistake of law; reckless or negligent use of force.* (1) The justification afforded by sections 28–836 to 28–839 is unavailable when:
> (a) The actor's belief in the unlawfulness of the force or conduct against which he employs protective force or his belief in the lawfulness of an arrest which he endeavors to effect by force is erroneous; and
> (b) His error is the result of ignorance or mistake as to the provisions of sections 28–833 to 28–843, any other provision of the criminal law, or the law governing the legality of an arrest or search.
> (2) When the actor believes that the use of force upon or toward the person of another is necessary for any of the purposes for which such belief would establish a justification under sections 28–835 to 28–840 but the actor is reckless or negligent in having such belief or in acquiring or failing to acquire any knowledge or belief which is material to the justifiability of his use of force, the justification afforded by those sections is unavailable in a prosecution for an offense for which recklessness or negligence, as the case may be, suffices to establish culpability.
> (3) When the actor is justified under sections 28–835 to 28–840 in using force upon or toward the person of another but he recklessly or negligently injures or creates a risk of injury to innocent persons, the justification afforded by those sections is unavailable in a prosecution for such recklessness or negligence towards innocent persons.

We doubt that this section applies here for the officers relied upon the law as given to them in their police officers manual. The mistake in interpretation rested with their superiors. In any event, the defense of good faith to a section 1983 action rests on federal policy, not state policy. *See Developments in the Law-Section 1983 and Federalism*, 90 Harv.L. Rev. 1133, 1211 n. 126 (1977); note 15 *supra*.

Rockwell were entitled to rely upon provisions of their manual, even though those provisions conflicted with the post-incident interpretations of state law as pronounced by the district court. Thus, their good faith was an issue in the lawsuit.

▮▮▮▮▮▮ Because good faith is dependent on motivation and conduct of the defendant as established at trial, the validity of the defense is ordinarily a question for the jury. *Pierson v. Ray, supra,* 386 U.S. at 557–58, 87 S.Ct. 1213; *Developments in the Law-Section 1983 and Federalism,* 90 Harv.L. Rev. 1133, 1209 n. 119 (1977). Moreover, like other affirmative defenses originally predicated on the common law,[17] the burden is on the defendant to prove each element of the defense to the jury's satisfaction.[18] Cf. *Pierson v. Ray, supra,* 386 U.S. at 555–58, 87 S.Ct. 1213. The existence of a good faith issue stands as a bar to appellant's claim to be entitled to a judgment n. o. v. on liability. Accordingly, the trial judge correctly overruled plaintiff's motions for a directed verdict and judgment n. o. v.

## IV. *The Propriety of a New Trial.*

In arguing that the trial judge erred in denying her motion for a new trial, appellant Leslie Landrum reiterates her excessive force argument, concluding that the jury verdict is contrary to the evidence and instructions. We have already ruled that the policemen used excessive force as a matter of law. We still need to analyze appellant's argument, however, in light of the principal applicable instructions.

Instruction No. 11 read as follows:

In connection with plaintiff's first and second causes of action, defendants contend that their actions did not deprive the plaintiff's decedent of his federal constitutional rights in that the defendants' actions were lawfully performed within the scope of their authority as police offi-

cers. In that regard the defendants claim:

1) That at the time of the incident in question here, they believed in good faith that they had probable cause to attempt to arrest plaintiff's decedent for a violation of Nebraska law; and

2) That the force used in attempting to make this arrest was reasonably necessary under the circumstances.

If the defendants reasonably believed that they were acting by authority of a valid state law in attempting to arrest plaintiff's decedent and that they had probable cause as that term is explained to you in these instructions, to attempt to arrest the plaintiff's decedent, and if the defendants acted in good faith on the basis of these beliefs, then the defendants' reasonable belief and good faith would lawfully authorize the defendants to attempt to arrest plaintiff's decedent.

If, in addition, the force utilized by defendants in attempting to effectuate this arrest were reasonably necessary, as explained elsewhere in these instructions, and were not excessive, then you must find for the defendants in connection with plaintiff's first and second causes of action.

If on the other hand you find by a preponderance of the evidence that defendants did not have probable cause to attempt to arrest plaintiff's decedent or if you find that defendants did have probable cause to arrest plaintiff's decedent but used excessive and unreasonable force in attempting to make that arrest, then you may find for plaintiff on the first and second causes of action.

Instruction No. 14 read as follows:

In making an arrest, a police officer may use whatever force is reasonably necessary. Reasonable force is generally that amount of force which an ordinary, prudent and intelligent person with the

---

17. In *Scheuer v. Rhodes,* 416 U.S. 232, 238 49, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), Chief Justice Burger analyzed the historical roots and developments of the defense.

18. Here the officers needed to show that "all other means [of capturing Roy Landrum had] failed," a prerequisite to the use of deadly force according to the Omaha police manual.

knowledge and in the situation of the police officer would have deemed necessary under the circumstances.

In determining whether or not the defendants used only such force as was reasonably necessary in attempting to arrest Roy Lee Landrum, you must bear in mind that the statutes of the State of Nebraska in full force and effect at the time of the incident in question provided in part that the use of deadly force in making an arrest is not justifiable unless:

1) The arrest is for a felony;

2) The person making the arrest is authorized to act as a police officer.

3) The person believes that the force used creates no substantial risk of injury to innocent bystanders; and

4) The person believes that the crime for which the arrest is made involved conduct including the use or threatened use of deadly force or that there exists a substantial risk that the person to be arrested will cause death or serious bodily harm if his apprehension is delayed.

Deadly force is defined as force which a person uses with the purpose of causing death or serious bodily harm or force which the person knows to create a substantial risk of death or serious bodily harm. Purposely firing a firearm in the direction of another person or at a vehicle in which another person is believed to be constitutes deadly force.

Instruction number 11 appears to apply the good faith test to the issue of probable cause to arrest, but as we have noted, the appellant does not contest that the police officers were justified in attempting to arrest the decedent, Roy Lee Landrum. The court, however, failed to instruct the jury that they must consider the good faith defense with regard to the police officers' use of unreasonable force.[19] The jury was simply informed in instruction 14 that "[r]easonable force is generally that amount of force which an ordinary, prudent and intelligent person with the knowledge and in the situation of the police officer would have deemed necessary under the circumstances." [20]

■ Thus, the trial court did not submit to the jury any good faith defense relating to the use of a firearm in conformity with the police manual. In essence, the instructions called upon the jury to rule whether the use of deadly force by the police officers was or was not reasonable. By dismissing the action, the jury determined that police officers Moats and Rockwell exercised "reasonable force" in shooting at the fleeing Roy Lee Landrum. But, as we have held in part III of the opinion, such deadly force was excessive under the circumstanc-

---

**19.** The district court denied the officers' requested instructions in this regard. *See* note 20 *infra.*

**20.** Two instructions requested by the defendants correctly embodied the elements of a good faith defense.

The first, defendants' proposed instruction 15, was a segment of the Standard Operating Procedure Manual of the Omaha police department explaining when an officer is allowed to use his firearm while on duty:

You are instructed that on August 15, 1975, the following police directive was effective with respect to the use of firearms:

An officer may use his firearm in the performance of duty for any of the following reasons:
(a) To defend himself from death or serious injury.
(b) To defend another person from death or serious injury.
(c) To effect the arrest or capture, or prevent the escape or rescue, of a person whom the officer knows or has reasonable grounds to believe has committed a felony, when all other means have failed.
(d) To kill a dangerous animal, or to kill an animal so badly injured that humanity requires its removal from further suffering.
(e) To give an alarm or call for assistance when no other means is available.

The second, defendants' proposed instruction 16, explained the good faith defense as applied to the use of deadly force in terms similar to the three-part test we outlined *supra*:

You are instructed that if Defendants or either of them in using deadly force in effecting the arrest of Plaintiff's deceased reasonably believed deadly force to be necessary to effect the arrest of Plaintiff's deceased and reasonably believed in good faith that they had the authority to use deadly force in the circumstance then attendant, you must reach a verdict for and on their behalf.

es as a matter of law. On the theory upon which the case was submitted to the jury, the jury verdict stands unsupported by the evidence and is contrary to the instructions.

Accordingly, appellant is entitled to a new trial. On retrial appellees have the right to a proper instruction on their good faith defense, and they bear the burden of proof on this issue.[21]

Reversed and remanded for a new trial.

21. Because of our disposition of the case, we do not reach appellant's claims of error regard-

ing certain other instructions given by the district court.