Rev. P.L. PERKINS, Rev. C.W. Gilcreast, Will Collier, Will Rodgers, Betty Jakes and Jessie Jakes, Plaintiffs,

v.

James T. CROSS, Clyde Murphy, Edwerne, Charles Weaver, Bill Chapman and Bob Chisnoll, Defendants.

No. H–C–79–77.

United States District Court, E.D. Arkansas, E.D.

Jan. 24, 1983.

On Petition for Attorneys Fees April 29, 1983.

L.T. Simes, II, West Helena, Ark., for plaintiffs.

Ralph C. Murray, West Helena, Ark., for defendants.

## MEMORANDUM OPINION

WOODS, District Judge.

### PRELIMINARY STATEMENT

In September of 1977 the Concerned Citizens, an organization of black citizens in West Helena, Arkansas, began a boycott against Twin Center Shopping Center, the principal retail merchandizing area in that municipality. The aims of the boycott as expressed in a petition submitted to the City Council were to force aldermanic elections by wards, resignation of the Mayor, dismissal of the Chief of Police and several police officers, more black employment, and action regarding alleged police brutality. (PX 2) The boycott was led by plaintiffs Perkins and Gilcreast. There were marches, picketing and extensive distribution of leaflets at the shopping center. The

boycott was effective, causing a substantial loss of revenue to businesses in the shopping center. It was supported by a majority of the black community although some blacks resented the rather aggressive attempts of the Concerned Citizens to dissuade them from patronizing stores in the shopping center.

The boycott continued without serious incident until December 23, 1977. Police and city officials conceded the right of the Concerned Citizens to picket and distribute leaflets. As the Christmas crowds began to build up at the shopping center, the police received complaints that the pickets were impeding pedestrian and vehicular traffic. The Chief of Police instructed his officers to closely monitor the situation at the shopping center. On December 23, and December 24, 1977 five of the plaintiffs were arrested for disorderly conduct. In addition, plaintiff Gilcreast was charged with resisting arrest and interfering with an officer's exercise of his duty. The plaintiffs contend that they were arrested for exercising their constitutional right to picket and distribute literature. Defendants claim that plaintiffs were arrested under the section of the disorderly conduct statute which makes it a misdemeanor to impede vehicular or pedestrian traffic. Ark.Stat.Ann. § 41–2908.

## THE PLEADINGS

There are serious deficiencies in the pleadings filed in this case. The complaint seeks compensatory and punitive damages against the defendants, all of whom are police officers. The Concerned Citizens as an organization is not a party plaintiff. The municipality of West Helena is not a party defendant. Class action rights are not asserted on behalf of members of the Concerned Citizens. The complaint was filed two years after the events which formed the gravamen of the complaint. Although an injunction is sought, the boycott was terminated early in 1978 and the organization has been inactive for almost five years. Obviously, there is no basis for an injunction. *Dataphase Systems, Inc. v. C.L. Systems, Inc.,* 640 F.2d 109 (8th Cir.1981).

This suit is in the simple posture of a suit by individual plaintiffs against individual defendants for damages sustained because of arrests made in violation of 42 U.S.C. §§ 1981, 1983 and 1985. The answer filed on behalf of the defendants is also deficient. It fails to raise the affirmative defense of qualified immunity, which protects police officers who make an arrest in good faith and for probable cause.

■ When a court evaluates police conduct relating to an arrest, its guidelines are good faith and probable cause. *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); *Procunier v. Navarette,* 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978); *Landrum v. Moats,* 576 F.2d 1320 (8th Cir. 1978); *cert. den.* 439 U.S. 912, 99 S.Ct. 282, 58 L.Ed.2d 258 (1978). *See also, Harlow v. Fitzgerald,* —— U.S. ——, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) where the court reexamined the qualified immunity defense in relation to White House aides but said that principles enunciated were applicable in § 1983 cases against state officials. 102 S.Ct. at 2738–39 n. 30. The entire matter of the qualified immunity of police officers in making arrests was thoroughly examined by the Court of Appeals of this Circuit within the last few months. In *Harris v. Pirch,* 677 F.2d 681 (8th Cir.1982) a jury verdict was reversed and judgment n.o.v. was entered for a sheriff who had made an alleged unconstitutional arrest and detention. Judge McMillian quoted from the Sixth Circuit opinion of *Glasson v. Louisville,* 518 F.2d 899 (6th Cir.1975): "Thus even though a police officer may not have chosen the wisest or most reasonable course of action, he will not be civilly liable if his conduct is based on a reasonable and good faith belief that it was necessary under the circumstances." *Id.* at 910.

■ The law is clear that the qualified immunity defense must be affirmatively pled, which was not done in this case. *Gomez v. Toledo,* 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980):

Moreover, this Court has never indicated that qualified immunity is relevant to the

existence of the plaintiff's cause of action; instead we have described it as a defense available to the official in question. See *Procunier v. Navarette, supra* [434 U.S.] at 562 [98 S.Ct., at 859]; *Pierson v. Ray, supra,* [386 U.S.] at 556, 557 [87 S.Ct., at 1219]; *Butz v. Economou,* 438 U.S. 478, 508 [98 S.Ct. 2894, 2911, 57 L.Ed.2d 895 (1978)]. Since qualified immunity is a defense, the burden of pleading it rests with the defendant. See Fed. Rule Civ.Proc. 8(c) (defendant must plead any "matter constituting an avoidance or affirmative defense"); 5 C. Wright & A. Miller, Federal Practice and Procedure § 1271 (1969). It is for the official to claim that his conduct was justified by an objectively reasonable belief that it was lawful. We see no basis for imposing on the plaintiff an obligation to anticipate such a defense by stating in his complaint that the defendant acted in bad faith. Id. at 640, 100 S.Ct. at 1923.

In their answer, the defendants place much reliance on the statute of limitations 42 U.S.C. § 1983, which they argue should be one year. In *Glasscoe v. Howell,* 431 F.2d 863 (8th Cir.1971) the Court of Appeals decided this issue contrary to defendants' contention.

■ The posture of the pleadings dictates summary disposition against three of the plaintiffs. Reverend P.L. Perkins, who testified that he is legally blind, by his own admission did not participate in picketing or distributing literature. He was arrested on other occasions not on the initiative of any of the defendants but on private warrants by two black citizens who are not party defendants. The undisputed testimony is that Betty Jakes was arrested by Lt. Sam Gause, a black police shift commander. While it is true that Sgt. Bob Chisnoll did transport her to the police department and book her, he was acting on orders of his superior and did not participate in any way in her arrest. Lt. Gause, the arresting officer, was not made a party defendant. The same is true of Wilson Rodgers who was arrested by Officer Kenneth Bryant, who was not made a party defendant.

## REV. C.W. GILCREAST

■ Reverend C.W. Gilcreast was secretary of the Concerned Citizens. He authored most of its literature, petitions and broadsides to public officials and the public generally. He was an aggressive and highly visible leader of the boycott. He was arrested by Sgt. Murphy at the shopping center at about 12:20 p.m. on December 24, 1977 for disorderly conduct. The arrest report states that "subject was passing out handbills and blocking pedestrian traffic." The testimony is in conflict as to the nature and extent of his resistance to the arrest. Murphy claims that Rev. Gilcreast sat down and then stretched out on his back and refused to enter the police car and that the only force exerted was in trying to force him into the police car against his active resistance, which mainly consisted of kicking the officers. Mayo Powell, a deputy sheriff, happened to be off duty in the shopping center with his wife. He went to the assistance of Murphy and radioed to another police unit operated by Officer Edwerne. Powell was an original defendant, but plaintiffs dismissed him from the suit. The three of them succeeded in handcuffing Gilcreast and placing him in the police car. Murphy and Powell testified that Gilcreast was not assaulted and that he offered substantial resistance to the arrest. Gilcreast denied this version. He claimed the officers threw him to the sidewalk, manhandled him into the police car and struck him after getting him into the car. He also claimed that Sgt. Murphy used profanity toward him. Murphy, an ordained minister like Perkins and Gilcreast, denied using profanity or mistreating Gilcreast. He testified that he only used such force as was necessary to effect the arrest. Gilcreast claimed that he had contusions at several locations on his body which required two-days hospitalization. There is no proof of any permanent disability or serious injury. Gilcreast's version of the incident is supported by the testimony of several members of the Concerned Citizens who were passing out literature and picketing at the time. The version given by Murphy is supported by Deputy

Sheriff Mayo Powell, the present Mayor, Bob Teeter, then an alderman who observed the arrest of Rev. Gilcreast, and other witnesses who were present. The testimony is in hopeless conflict. I find that Rev. Gilcreast has failed to sustain his burden of proving that the officers were unjustified in their conduct toward him. Without question, he had the right to picket and pass out literature. He did not have a constitutional right to resist arrest. See *Trejo v. Perez*, 693 F.2d 482 (5th Cir.1982) for a case involving similar facts. There the plaintiff also struggled with police officers after being arrested under an unconstitutional statute. Even if Officer Murphy acted improperly in arresting him, Rev. Gilcreast should have gone willingly and peacefully to the police station. All of the others did exactly that, and charges against them were dismissed in municipal court. Rev. Gilcreast was convicted of disorderly conduct and resisting arrest in municipal court, and there was an affirmance in Circuit Court. He did not elect to appeal his case further to the Arkansas Supreme Court. While the Federal Courts should be vigilant to enforce the rights granted under Federal statutes, weight should also be accorded to the decisions of State courts involving the same activity. There is no proof whatsoever that Rev. Gilcreast did not receive a fair trial in the municipal court or Circuit Court of Phillips County. Nor is there any reason to suspect a vendetta by these courts against the Concerned Citizens. With the exception of the charges against Rev. Gilcreast, all the other charges against the plaintiffs were dismissed.

## JESSIE JAKES AND WILL COLLIER

■ These two individuals were arrested while picketing and passing out literature at the shopping center. Jessie Jakes was arrested by Sgt. Bill Chapman and Collier by Captain Charles Weaver. Their arrests were without incident. They were detained about two hours and permitted to make a paper bond. Charges against them were dismissed in municipal court. While the above officers may have been entitled to qualified immunity grounded in good faith and probable cause, they did not plead this affirmative defense. It is therefore waived. This leaves no alternative to the assessment of nominal damages in this case. The plaintiffs clearly had a constitutional right to distribute literature and picket at this shopping center. If plaintiffs were interfering with traffic (and the proof in this respect is weak), the defendants should have pled the affirmative defense of qualified immunity. Not having done so, they are liable for at least nominal damages. I find that plaintiffs sustained no actual damages except for being detained about two hours. Judgment will be entered on behalf of Jessie Jakes against Bill Chapman in the amount of One Hundred Dollars ($100.00) and in favor of Will Collier against Captain Charles Weaver in the amount of One Hundred Dollars ($100.00). The case against James T. Cross, Chief of Police, is dismissed. There is no evidence that he participated in either of these arrests. He cannot be held liable on a theory of *respondeat superior. Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The award of nominal damages is made under 42 U.S.C. § 1983. I find no liability under 42 U.S.C. § 1981 or § 1985.

■ With regard to 42 U.S.C. § 1981, I find that the plaintiffs have failed to sustain their burden of proving that the actions of the arresting officers were racially motivated. Nor do I find any conspiracy on the part of the defendants to deprive plaintiffs of their constitutional rights under 42 U.S.C. § 1985. The Concerned Citizens Group carried on their activities without police interference for several months. At the time these plaintiffs were arrested, other picketing members of the organization were carrying out verbal persuasion and passing out literature. I find that the arrests were nothing more than the response of individual officers to what they conceived to be a violation of the disorderly conduct statute.

## On Petition For Attorney Fees

Six members of the Concerned Citizens, an organization of black citizens in West

Helena, Arkansas, sued six police officers employed by that municipality in U.S. District Court. The gravamen of the complaint was the alleged illegal arrests of plaintiffs during the picketing of a West Helena shopping center. The matter was tried to the Court and the findings of fact and conclusions of law are detailed in a memorandum opinion filed January 24, 1983. The complaint was dismissed as to four plaintiffs and four defendants. Nominal damages of $100.00 were awarded to each of the two plaintiffs against two defendants. The attorney for the plaintiffs has now filed a 42 U.S.C. § 1988 petition for attorney's fees in the sum total of $43,-218.50 representing 577.58 hours of work at $75.00 per hour.

At the threshold we are faced with the problem of whether there is an entitlement to attorney fees on a 42 U.S.C. § 1983 recovery of only nominal damages by two of the six plaintiffs. Under these circumstances can it be said that plaintiffs were the prevailing parties? While there may be some doubt (see *Huntley v. Community School Board of Brooklyn,* 579 F.2d 738 (2d Cir.1979)), the weight of authority and the Eighth Circuit cases impel an affirmative answer. "Plaintiffs won a jury verdict of only one dollar in their civil rights action against defendant . . . . They are thus the prevailing parties under 42 U.S.C. § 1988 . . . ." *Skoda v. Fontani,* 646 F.2d 1193 (7th Cir.1981). "Fees may not be denied simply because only nominal damages are awarded." *Perez v. University of Puerto Rico,* 600 F.2d 1 (1st Cir.1979). See also *Kimbrough v. Arkansas Activities Ass'n,* 574 F. 2d 423 (8th Cir.1978); *Milwe v. Cavuoto,* 653 F.2d 80 (2d Cir.1981); *Carey v. Piphus,* 435 U.S. 247, 257 n. 11, 98 S.Ct. 1042, 1049 n. 11, 55 L.Ed.2d 252.

■ The fact that only two of six plaintiffs recovered anything is no ground for denying attorney's fees but is a factor to be considered in the amount awarded. "The court properly determined that appellees were the prevailing party in this action. While it is true that the initial suit included eight defendants and that the final judgment was entered against only three, it is only the suit against those three which is the basis for the fees." *Coop v. City of South Bend,* 635 F.2d 652, 654 (7th Cir. 1980).

■ In addition to considering the fact that only a fraction of the plaintiffs was successful, the amount of the recovery is a significant factor in the amount of the attorney fees to be assessed. This is particularly true when only nominal damages are given. "The fact that plaintiff may . . . recover only nominal damages shall in no way diminish his eligibility for attorney's fees under § 1988 *though it is one of the factors to be considered on the amount of such award.*" *Burt v. Abel,* 585 F.2d 613 (4th Cir.1978) (emphasis added). "The small amount of the award for damages is an appropriate consideration in the determination of reasonable fees." *Coop v. City of South Bend, supra.* This certainly does not mean that the amount of the award should be the only factor considered.[1] On several occasions the Court of Appeals of this Circuit has cited with approval[2] the case of *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974). This case lists twelve factors to be considered in fixing attorney fees. We have considered each one. The first and undoubtedly the most important is the time and labor required in the litigation. *Id.* at 718. It is with reluctance that we must reject as completely unreasonable the hours claimed by plaintiffs' attorney. Based on a 40-hour week, the hours claimed (577.58) work out to 14 weeks of time spent on this case to the exclusion of all else. This was not a com-

---

1. In *Jones v. McMillan Bloedel Containers, Inc.,* 685 F.2d 236 (8th Cir.1982) the court was critical of the district judge for giving undue importance to the amount of the award in fixing the fee. It should be noted however that more than nominal damages were obtained in this case. The court also observed "that there was additional relief obtained which was achieved in the form of a consent decree." *Id.* at 239.

2. *See Jones v. McMillan Bloedel Containers, Inc., supra* note 1; *Brown v. Bathke,* 588 F.2d 634 (8th Cir.1978).

plex case. It did not involve novel or difficult questions.[3] The plaintiffs' case was begun at 10:15 a.m. on January 10, 1983 and was concluded at 5:03 p.m. on the same date. All the testimony in the case was concluded at 3:30 p.m. on the following day. Besides the plaintiffs themselves, six witnesses were called on their behalf. The testimony of these witnesses was brief and much of it was duplicative. At the close of the plaintiffs' case, it was obvious that in two cases the wrong officers had been sued and the officers actually involved had not been sued in actions now barred by limitations. Plaintiff Perkins did not participate in the picketing and was not arrested at the shopping center. He was arrested on other occasions on private warrants sworn out by black citizens who were not defendants. A substantial part of the 73.69 hours claimed before suit was filed was claimed for defending Rev. Perkins on these complaints. One hour and a half ($112.50) was claimed for writing a letter to the Federal Court Clerk two years prior to filing this suit. At the same time four hours ($300.00) were claimed for filing a petition for remand. Such a petition dated December 28, 1977 does not appear in the file and we are at a loss to know the basis for this pleading and how it relates to this litigation. An order of remand is itemized at 2.10 hours ($162.50). Apparently this time is claimed for reading and reviewing the order of remand. In the itemization of time, plaintiffs' attorney submits charges for many letters and phone calls. The letters average about an hour's time ($75.00) and the calls one-half hour ($37.50). Out of curiosity I have looked at a letter to me dated November 25, 1980, which consists of three lines and serves only to transmit a document. One hour's time ($75.00) is charged for this letter. Forty-six hours are charged for all letters ($3,450.00) and six hours and 40 minutes for all phone calls ($500.00). The letters appearing in the file appear to be routine letters. Although 25½ hours are charged for trial time in the case, the Clerk's minutes show that the entire trial took 13½ hours.

The time and labor affidavit is so replete with gross exaggerations and outright misstatements that I have no alternative but to completely reject it under the time tested maxim, *falsus in uno, falsus in omnibus*. In my opinion, based upon several decades as a trial lawyer, the preparation and trial of the two cases in which plaintiff recovered nominal damages should not have required more than 20 hours of time to prepare and try. I will therefore award the attorney's fees for the two cases in the amount of $1,500.00 or $750.00 for each case.

The sole remaining question is whether these attorney's fees should be assessed against the defendants found liable or solely against the City of West Helena, since they were sued and were acting in their official capacities. Clearly, the latter rule is applicable. The case of *Hutto v. Finney*, 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978) is controlling. In that case it was said:

> The legislative history makes it clear that in such suits attorney's fee awards should generally be obtained "either directly from the official, in his official capacity, from funds of his agency or under his control, or from the State or local government (*whether or not the agency or government is a named party*)." S.Rep. No. 94–1011, p. 5 (1976). . . . . There is no indication in this case that the named defendants litigated in bad faith before the Court of Appeals. Consequently, the Department of Correction is the entity intended by Congress to bear the burden of the counsel-fees award. (*Id.* at 700, 98 S.Ct. at 2578) (emphasis supplied).

There is no proof whatsoever that defendants Chapman and Weaver acted in bad faith. As a matter of fact, if qualified immunity had been pled on their behalf, I probably would not have rendered even nominal damages against them.

*Hutto v. Finney, supra,* was interpreted by the Court of Appeals of this Circuit in *Pickett v. Milam,* 579 F.2d 1118 (8th Cir. 1978). "We agree with the district court's

---

**3.** *See Johnson v. Georgia Highway Express,*     *Inc., supra* at p. 718.

finding that there is no indication that the appellees acted in bad faith. Thus no award of attorney fees against the appellees in their individual capacities is justified." *Id.* at 1120.

This precise question was before my distinguished colleague, U.S. District Judge Oren Harris in *Parks v. Goff,* 483 F.Supp. 502 (E.D.Ark.1980). "Awards made against officials in that [official] capacity are treated as awards against the governmental entity. *Hutto v. Finney,* 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978) *and are not paid by the individual." Id.* at 509 (emphasis supplied). Judge Harris later noted that the judgment for nominal damages would include a reasonable attorney's fee "which shall be treated as an award against the municipality pursuant to *Hutto v. Finney, supra." Id.* at 510.

Contemporaneously herewith a judgment in the amount of $1,500.00 will be entered against defendants Chapman and Weaver in their official capacities, which judgment shall be paid by the City of West Helena.