James CARLSON, et al., Appellants,

v.

COUNTY OF HENNEPIN, et al., Respondents.

No. C1–88–610.

Court of Appeals of Minnesota.

Aug. 23, 1988.

Review Denied Oct. 10, 1988.

**454**

Stewart R. Perry, Shawn M. Perry, Perry & Perry, Wayzata, for appellants.

Thomas L. Johnson, Hennepin Co. Atty., Sara Wahl, Asst. Co. Atty., Minneapolis, for respondents.

Heard, considered and decided by LANSING, P.J., LOMMEN * and SCHULTZ, JJ.

## OPINION

HAROLD W. SCHULTZ, Acting Judge.

Appellants James and Darlene Carlson brought this action against the State of Minnesota, the Commissioner of Public Welfare, Hennepin County and its Bureau of Social Services and three individual employees of Hennepin County, alleging deprivation of their civil rights. After the state and the Commissioner of Public Welfare were dismissed by the trial court, the action proceeded against the remaining defendants. The individual defendants' motion for summary judgment and motion in limine were granted, leaving only Hennepin County as a defendant. The county then moved for summary judgment, alleging the granting of the motion in limine removed all evidence of appellants' claims. This mo-

tion was granted, and the Carlsons have appealed.

## FACTS

Appellants are a middle-aged white couple. In 1979, a four-day-old black child was placed in the Carlsons' home for foster care.

The child's birth mother's parental rights were terminated when the child was 16 months old. On learning this, the Carlsons immediately contacted Patricia Brown, the Hennepin County social worker handling the child's case, and informed her they wanted to adopt the child. Brown told the Carlsons it would be against county policy to allow a white couple to adopt a black child.

William Long, Patricia Brown's supervisor, has also stated that, "since [the child] was a healthy, normal, black toddler, our general philosophy would be to see if there was a black adoptive home available." Based on this general policy, the child welfare service of Hennepin County recommended to the Commissioner of Public Welfare that the Carlsons' adoption petition be denied based on race and age.

The county's general policy is aimed at preserving a child's ethnic heritage, in accordance with 12 M.C.A.R. 2.200 C.1.a. and b. (1981), codified as amended at Minn.R. 9560.0040, subpt. 2–3 (1987), which provides:

> a. The local social service agency shall, without undue delay, seek an adoptive home which will meet the child's special needs. Special needs include sibling ties, racial or religious heritages, and health, social and educational needs.
>
> b. The local social service agency shall make reasonable efforts to provide and preserve the child's heritage by placing the child
>
> (1) In an adoptive home of similar background; or
>
> (2) In an adoptive home which is knowledgeable and appreciative of the child's heritage.

According to Ruth Weidell, the supervisor of the Adoption Unit of the Department of Public Welfare, who wrote the rule, it was contemplated that an adoptive agency would give first consideration to a home of similar background. If none was available, the second option would be to place the child in an adoptive home knowledgeable and appreciative of the child's heritage.

In accordance with this policy, Brown contacted the State Adoption Exchange, asking for names of potential black adoptive families. On September 19, 1980, she received a referral of a potential black adoptive family, the Caesars, from the Hennepin County Adoption Unit.

Also on September 19, 1980, the Carlsons filed a petition for leave to adopt. The Commissioner of Public Welfare recommended that the Carlsons' petition be denied for two reasons: first, the county's required efforts to place the child in a black adoptive home, and second, the Carlsons' failure to meet the filing requirements. The Hennepin County Juvenile Court followed this recommendation.

Appellants moved the court to waive the filing requirements to allow them to file an adoption petition and moved for an order finding the county's conduct to be discriminatory and Minn.Stat. § 260.181 to be unconstitutional. The constitutional question was dropped at the time of the hearing.

The county arranged for a visit between the child and the Caesars, to take place several days before the hearing on appellants' motion. Appellants protested the visit but acquiesced, fearing a refusal to allow the visit would be viewed as noncooperation.

Following the hearing on the Carlsons' motion, the court, on February 25, 1981, waived the filing requirements and allowed them to proceed. The court also found the county had engaged in discrimination on the basis of age and race.

On February 26, 1981, the Caesars filed a motion to intervene in the adoption proceeding and a motion to waive the filing requirements. The county opposed the Caesars' motion to waive the filing requirements.

The two petitions proceeded to an evidentiary hearing, which was held on May 19, 1981. The county did not participate. Following the hearing, the Carlsons' petition was granted.

The Carlsons filed this action under 42 U.S.C.A. § 1983, alleging the county and state had violated their right to equal protection in the course of the adoption process.

The county moved to dismiss for failure to state a claim. This motion was denied. The court found there were issues of fact which made the county's motion inappropriate. The court also determined the Carlsons had standing to litigate only actions by the county after February 25, 1981, when their adoption petition was approved. Appellants amended their complaint, and the county brought another motion to dismiss. This motion was also denied, since discovery was not complete.

The county subsequently brought a motion for summary judgment, which was denied. A subsequent motion to dismiss the individual defendants on the basis of qualified immunity was granted. At the same time, the county's motion in limine was granted, thereby excluding the findings of February 25, 1981 that the county had engaged in age and race discrimination. The Carlsons had argued the county was collaterally estopped from trying the discrimination charges, an argument specifically rejected by the court. The court also excluded evidence of the Carlsons' subsequent attempt to adopt another child. Finally, the court excluded any evidence of the county's actions before February 25, 1981.

Appellants petitioned this court for discretionary review, which was denied. In light of the last-order, summary judgment was then granted for the county, since the order excluded all evidence on which appellants intended to rely. Final summary judgment was granted, and the Carlsons appealed.

### ISSUES

1. Did appellants state a claim under 42 U.S.C.A. § 1983?

2. Did the juvenile court's findings of age and race discrimination in its February 25, 1981 order have collateral estoppel effect?

3. Did the trial court err in granting the county's motion in limine?

4. Did the trial court err in granting summary judgment to the individual defendants on the basis of qualified immunity?

### ANALYSIS

1. Section 1983 provides:

Every person who, under color of any statute, * * * of any State * * * subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

■ Appellants contend respondents' actions in seeking a black family to adopt the child, to the exclusion of a white family, violated their right to equal protection of the law. The county responds that appellants lack standing to assert this claim. The county's argument is that because the Carlsons had failed to meet the filing requirements, they could not adopt until February 25, 1981, when those requirements were waived by the court. Until then, appellants had no right to protest the county's efforts to place the child for adoption.

The county's argument is persuasive. Assuming the county impermissibly took appellants' age and race into consideration, it is clear the county could not have allowed them to adopt the child, since they had not met the filing requirements. Since the Carlsons were not entitled to be considered as adoptive parents, they lack standing to complain that the county's refusal to consider them was based on age and race. See *Mount Healthy City School District v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) (teacher fired for first amendment conduct and poor job performance not entitled to reinstatement if school board would have fired him in the

absence of protected conduct); *Village of Arlington Heights v. Metropolitan Housing Development Corporation,* 429 U.S. 252, 270 n. 21, 97 S.Ct. 555, 566 n. 21, 50 L.Ed. 450 (1977) (if village can show refusal to rezone would have been made in absence of racial considerations, courts will not interfere in decision); *Ledford v. Delancey,* 612 F.2d 883 (4th Cir.1980) (social worker who lacked college degree required for job lacks standing to claim termination was for exercising free speech). The Carlsons were not qualified to be adoptive parents regardless of the presence or absence of any discrimination.

■ 2. Collateral estoppel prevents parties from relitigating issues which are identical to those issues already litigated by the parties in a prior action and necessary and essential to the resulting judgment. Collateral estoppel is appropriately applied where:

  1. The issue was identical to one in a prior adjudication;

  2. There was a final judgment on the merits;

  3. The estopped party was a party or in privity with a party to the prior adjudication; and

  4. The estopped party was given a full and fair opportunity to be heard on the adjudicated issue.

*Ellis v. Minneapolis Commission on Civil Rights,* 319 N.W.2d 702, 704 (Minn.1982) (quoting *Victory Highway Village, Inc. v. Weaver,* 480 F.Supp. 71, 74 (D.Minn.1979)).

As the county correctly points out, the juvenile court order was a waiver of the adoption filing requirements. The order merely allowed appellants to proceed to file an adoption petition without first meeting the requirements of Minn.Stat. § 259.22, subd. 2.

The order in question was interlocutory in nature and could not have been appealed pursuant to the Minnesota Rules of Civil Appellate Procedure.

■ 3. The trial court, in its motion in limine, excluded evidence in three general areas. First, the trial court excluded any reference to the juvenile court's findings of age and race discrimination. Second, the trial court prohibited appellants from referring to Hennepin County's actions prior to February 25, 1981, when the juvenile court granted appellants' motion to waive the filing requirements. Finally, the trial court excluded any evidence relating to appellants' subsequent attempts to adopt a different child at a later time.

Evidentiary rulings are left to the sound discretion of the trial court. Those decisions will be reversed only on a clear abuse of that discretion. *Jenson v. Touche Ross & Co.,* 335 N.W.2d 720, 725 (Minn.1983); *Cole v. Paulson,* 380 N.W.2d 215, 219 (Minn.Ct.App.1986). The evidentiary rulings in the motion in limine will be addressed separately.

(a) Appellants' contention as to the exclusion of the findings of the juvenile court discussed earlier is that those findings have collateral estoppel effect. As discussed earlier, this is not the case.

(b) As discussed earlier, prior to February 25, 1981, appellants were not eligible to adopt the child. The trial court's motion in limine excluded any evidence of Hennepin County's actions prior to that date in attempting to find an adoptive home for the child.

Appellants lack standing to litigate the disposition of the child prior to February 25, 1981, when they became eligible to be adoptive parents.

■ (c) The trial court excluded evidence of appellants' attempts to adopt a different child at a time subsequent to their adoption of the child in this case. The trial court concluded that evidence of the county's refusal to permit appellants to adopt a different child at a subsequent time was irrelevant to the issues in the present case. Evidence is relevant if it logically tends to prove or disprove a material fact in issue. *Colby v. Gibbons,* 276 N.W.2d 170, 176 (Minn.1979). The material facts in issue in this case are whether the county and the individual defendants discriminated against appellants on the basis of race.

Appellants argue the subsequent attempts to adopt are relevant on two

grounds. First, appellants have made a claim for punitive damages and they claim the malice of defendants is relevant to a claim for punitive damages. Appellants argue "the continuing refusal by defendants to allow the plaintiffs to adopt children bears directly on the malice issue." It does not appear, however, that this continuing refusal by defendants would be relevant to the issue of whether the respondents acted with malice at the time of appellants' attempt to adopt the child at issue in this case.

Appellants' second stated ground for relevance is that the continuing refusal by the respondents to allow appellants to adopt children shows that the respondents continue to intentionally discriminate against plaintiffs as punishment for their refusal to give up their child upon request. Again, however, this does not address the issue in this case. We find no abuse of discretion in the trial court's evidentiary rulings and granting the county's motion in limine.

■ 4. The trial court granted the individual respondents' motion for summary judgment, finding they were entitled to qualified immunity pursuant to *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Under *Harlow*, government officials performing discretionary functions generally are shielded from liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Id.* at 818, 102 S.Ct. at 2738.

Appellants assert the individual respondents engaged in racial discrimination, that appellants' right to be free from such discrimination was clearly established such that a reasonable person would have known of it, and there is no qualified immunity. The respondents take a narrower view of their actions: they attempted to place a black child in a black adoptive home in compliance with an unchallenged state regulation; it was not clearly established, nor is it now, that this would violate appellants' right to equal protection; therefore, they are entitled to qualified immunity.

The respondents have a persuasive argument. The "clearly established right" required under *Harlow* must be more particularized than, as in this case, the right to be free from racial discrimination. *See Anderson v. Creighton*, — U.S. —, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987) ("if the test of 'clearly established law' were to be applied at this level of generality, it would bear no relationship to 'objective legal reasonableness' that is the touchstone of *Harlow*"). The Court in *Anderson* went on to say:

> [T]he right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.

*Id.*

■ The focus of inquiry should be on the government official's conduct, rather than on the right. *Anderson*, 107 S.Ct. at 3038. Ordinarily, actions taken in reliance on state statutes or rules are objectively reasonable and the actor will have qualified immunity. This is so even if the statute or regulation is later declared unconstitutional. *Landrum v. Moats*, 576 F.2d 1320, 1327 n. 14 (8th Cir.1978).

The actions taken by the individual respondents in reliance on 12 M.C.A.R. 2.200 C.1.a. and b. were objectively reasonable under *Landrum*.

DECISION

AFFIRMED.