Robert "Say" McINTOSH, Plaintiff,

v.

Frank WHITE, Individually and as Governor of the State of Arkansas, Arkansas Republican Party—Frank White Election Committee, Curtis Finch, Jr., Individually and as Campaign Chairman of the Frank White Re-Election Committee, Arkansas State Police; Tommy Goodwin, Individually and as Director of the Arkansas State Police, North Little Rock City Police Department, Bill Younts, Individually and as Chief of North Little Rock Police Department, John Doe, and Richard Roe, etc., Defendants.

No. LR–C–82–153.

United States District Court, E.D. Arkansas, W.D.

March 19, 1984.

Horace A. Walker, Little Rock, Ark., for plaintiff.

Mary Stallcup, Asst. Atty. Gen., State of Ark., Little Rock, Ark., for defendants.

James M. McHaney, Little Rock, Ark., for Curtis Finch, Jr.

Walter Paulson, Jr., Little Rock, Ark., for Frank White.

Jim Hamilton, City Atty., No. Little Rock, Ark., for North Little Rock Police.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

HENRY WOODS, District Judge.

### FINDINGS OF FACT

1. The plaintiff, Robert "Say" McIntosh is a United States citizen and a resident of Little Rock, Pulaski County, Arkansas. He is a member of the black race.

2. Defendant Frank White was during the time frame relevant to this lawsuit Governor of the State of Arkansas and titular head of the Arkansas Republican Party. In February, 1982 he was a candidate for reelection.

3. Defendant Curtis Finch, Jr. was at all times material to this action chairman of the Frank White Re-Election Campaign Committee. He was charged with the executive control of the Frank White Re-Election Campaign Committee and thereby exercised the executive authority over its fund-raising activities. He is a citizen of Arkansas and holds no public office in the State of Arkansas.

4. Defendants Jerry Reinold and Barney Phillips are police officers of the Arkansas State Police and as such are charged with the responsibility for enforcement of the criminal laws of the State of Arkansas.

5. A Governor Frank White Appreciation Luncheon was scheduled to be held at the Little Rock Convention Center at noon on February 26, 1982. The Little Rock Convention Center is owned and operated by the City of Little Rock.

6. The Center is comprised of several exhibit halls and other areas which are available for rent for the conduct of public or private functions, and it is a regularly accepted practice to charge admission prices for the functions held therein and to exclude persons who have not paid an admission price.

7. The City of Little Rock does not involve itself in private functions nor does it require organizations holding private functions in the Center to hold them open to the public.

8. The Governor Frank White Appreciation Luncheon was designed as a fund raiser and was organized and financed by the Frank White Re-Election Campaign Committee and the Republican Party. The luncheon was open to those supporters of Mr. White who were willing to make a $125.00 campaign contribution in return for a ticket to the luncheon.

9. Vice President George Bush appeared as the featured speaker at the luncheon.

10. The luncheon was in all respects a private function, and admission was limited to ticket holders only.

11. On February 25, 1982 Reverend Daniel Bowman, accompanied by Mr. Robert "Say" McIntosh, purchased a ticket from the Campaign Committee, paying for the ticket in cash. It is not clear on whose behalf the ticket was purchased, but Mr. McIntosh and Rev. Bowman stated that

they both contributed toward the purchase price.

12. On that same day Mr. McIntosh sent a letter to then Governor Frank White in which he stated that Mr. McIntosh intended to speak at the luncheon and requested that Governor White inform him whether he should speak before or after the Vice President.

13. A previous series of written and published statements indicated that Mr. McIntosh was both personally and politically opposed to Mr. White and to his candidacy for governor.

14. Finch was concerned over the purchase of a ticket with an amount tendered in cash, which could not be accepted in their belief because the amount exceeded that authorized by law for cash contributions under the Political Practices Act, Ark. Stat.Ann. § 3–1116. In view of plaintiff's past history, Finch was also concerned that plaintiff would disrupt a meeting at which the Vice President was the featured speaker.

15. The Secret Service had similar concerns and called in Mr. McIntosh and secured an agreement that he would not approach the head table where the Vice President would be seated and would not interrupt the latter's speech. McIntosh left the definite impression with the Secret Service agent that he planned to speak at the meeting but would speak from his seat.

16. At approximately 11:00 a.m. Mr. McIntosh came to the Convention Center and sought admission to the luncheon. Mr. Curtis Finch, accompanied by Sergeants Reinold and Phillips, members of the State Police and of the Governor's security force, met Mr. McIntosh at the door. Mr. Finch informed Mr. McIntosh that his ticket had been purchased in cash, in violation of the Political Practices Act, and that he would not be admitted to the function. Mr. Finch repeatedly tendered a refund and explained to Mr. McIntosh that he would not be allowed to enter the luncheon and asked him to leave the premises.

17. Mr. McIntosh on each occasion when asked to accept a refund refused and stated that he intended to enter the luncheon. Sergeant Reinold then identified himself and Sergeant Phillips and told Mr. McIntosh that the luncheon was a private function, that Mr. Finch would not accept his ticket, and that Mr. McIntosh was therefore requested to leave and would be required to do so.

18. When Mr. McIntosh refused to leave, Sergeant Reinold informed him that he would be arrested for creating a disturbance if he failed to leave the premises. Mr. McIntosh replied, "Well, take me to jail."

19. Mr. McIntosh was thereupon arrested at 11:27 A.M., according to the State Police Radio Log, and escorted out of the building by Sergeants Reinold and Phillips. As he was leaving via the escalator, he yelled to the entering ticket holders, "You peckerwoods, I shall return."

20. The officers took Mr. McIntosh to the North Little Rock jail because the Little Rock jail policy prohibited acceptance of prisoners from outside law enforcement officers. He arrived there at 11:36, according to the State Police Radio Log.

21. At the North Little Rock jail, Mr. McIntosh was charged with disorderly conduct, questioned, booked and released on his own recognizance at 1:16 P.M., according to the records of the North Little Rock Police Department. There was no inordinate delay in booking and releasing plaintiff. The short delay was caused by two other individuals being booked ahead of him and the unfamiliarity of the State Police officers with the paper work required by the North Little Rock Police Department.

22. There is no credible evidence that any of the actions by any of the defendants taken against Mr. McIntosh were based upon his race. There were 25–40 blacks in attendance at the luncheon.

23. The actions taken by Mr. Curtis Finch were in his capacity as a private

citizen, serving as Chairman of the Frank White Re-Election Campaign Committee.

24. The actions taken by Sergeants Reinold and Phillips, while they were acting in their capacities as officers of the Arkansas State Police, were taken reasonably and in a good faith effort to perform their duties as law enforcement officers.

25. Sergeants Reinold and Phillips arrested Mr. McIntosh because they believed in good faith that he had committed the misdemeanor of disorderly conduct in their presence, both by refusing to leave the premises and by refusing to comply with a lawful order of a law enforcement officer.

26. There is no evidence that any action taken by Sergeants Reinold or Phillips were based upon Mr. McIntosh's race.

27. The Court finds no evidence, either direct or circumstantial, indicating that these police officers conspired with any other person to prevent Mr. McIntosh from attending the luncheon, nor were they told in advance to arrest Mr. McIntosh. From the evidence, it appears that they were warned that Mr. McIntosh would present himself and demand entry for the purpose of disrupting the luncheon, but that they were not to arrest him unless he violated the law.

## CONCLUSIONS OF LAW

1. At the close of plaintiff's evidence, the Court dismissed the complaint as to Governor White, State Police Superintendent Tommy Goodwin, and North Little Rock Chief of Police Robert Younts. The plaintiff's proof failed to connect those individuals with this episode in any manner. Governor White did receive communications from the plaintiff, but there is no testimony that he ordered plaintiff's arrest or was present when he was arrested. The Court has jurisdiction of the various causes of action under the statutes alleged, including the First, Fourth, Fifth, Thirteenth and Fourteenth Amendments to the United States Constitution. 42 U.S.C. §§ 1981, 1983, 1985, 1986 and 1988. The Court has jurisdiction over the common-law claims under its pendent jurisdiction because the two claims derive from a common nucleus of operative facts and the plaintiff would ordinarily be expected to try his claims in one proceeding. *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

2. The plaintiff's claims under 42 U.S.C. § 1983 must be based upon proof that the actions of the defendants deprived him of a right secured by the Constitution or laws of the United States, while that defendant was acting under color of state law. *Davis v. Paul*, 505 F.2d 1180 (6th Cir.), reversed on other grounds 424 U.S. 693 (1974). The statute does not reach purely private conduct. *See, e.g., Braden v. Texas A & M University Systems*, 636 F.2d 90 (5th Cir.1981).

3. In order to establish state action, the plaintiff must establish a close nexus between the challenged conduct and the state, so that the state can be said to have a significant involvement in the activity. *Rendell-Baker v. Kohn*, 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982).

4. Based upon the facts as presented, the Court finds no significant involvement of the state that is sufficient to meet the requirements to show state action, in barring entry to the luncheon. Although the facility is publicly owned, it is owned by the city and the city is not a party to this proceeding. Further, the city allows persons to rent it for private functions to exclude members of the public more or less as they wish, as for example for failure to pay an admission price. The Court expressly finds that the city does not require by contract or otherwise private groups making use of the facility to grant access to all members of the public. In fact, to do so would substantially restrict the usefulness of such facilities, since many private groups hold functions for which they charge admission and for which they must, as a matter of logic and economic necessity, deny admission to those who have not paid the admission price.

5. The fact that a private function is held at such a facility, regardless of the facility's other potential uses as a public forum, does not render the activity or the function itself a public forum for all speakers, trespassers or uninvited guests. *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Green v. White*, 693 F.2d 45 (8th Cir.1982).

6. The proof adduced at trial indicated that the Frank White Re-Election Campaign Committee was a private organization, which existed solely for the purpose of directing the campaign of Frank White and raising funds pursuant to that effort. There was no direct involvement by the state or by any governmental entity.

7. The Arkansas Republican Party is also private for the purposes of this litigation. It may be that in the Republican Party's function in holding election primaries or other clearly public functions, the Republican Party could arguably be said to meet a liberal "state action" requirement. However, in its function of fund raising and campaigning, the party is clearly private. As the court held in *Rendell-Baker, supra,* the court in determining whether state action exists must look to the specific activity which is the subject of the lawsuit and not to unrelated activities.

8. The facts establish that Mr. McIntosh purchased a ticket to the luncheon in cash, which was at least a technical violation of the Arkansas Political Practices Act, Ark.Stat.Ann. § 3–1116. That law provides that no campaign contribution in excess of $100.00 can be made in cash. Mr. Finch had a right and a legal duty to abide by that statute and was reasonable in directing the refund of the cash contribution after it was mistakenly accepted.

9. Mr. Finch did not consider the plaintiff a campaign supporter, and as a private citizen in the exercise of his First Amendment rights to campaign for high public office, he was free to accept or refuse to accept a proffered campaign donation. Mr. Finch chose to refuse, and the Court does not find that this refusal amounted to a violation of the plaintiff's constitutional rights.

10. Mr. Finch, acting in his capacity as Chairman of the Campaign Committee, was also reasonable in attempting to tender a return of the cash donation to the plaintiff and it cannot be said that as a private party he violated the constitutional rights of the plaintiff in excluding him from the luncheon.

11. Mr. Finch had been placed on notice by Mr. McIntosh that he intended to speak at the luncheon, and the Court finds that Mr. McIntosh's previous activities as they related to Governor White clearly indicated that he would have been most uncomplimentary and disruptive. In determining that Mr. McIntosh should be excluded from a purely private event, Mr. Finch therefore acted reasonably and in good faith and solely as a private person. Plaintiff has cited no cases, and the Court knows of none, that support the proposition that Mr. McIntosh had a constitutional right to enter and disrupt the luncheon.

12. In fact, to the contrary, while freedom of expression is a fundamental right, the courts recognize the necessity of preventing flagrant abuses of such rights by individuals who would utilize no self-restraint in exercising such a right. *Pocket Books, Inc. v. Walsh*, 204 F.Supp. 297 (D.Conn.1962); *Lloyd Corp. v. Tanner*, 407 U.S. 551, 567–68, 92 S.Ct. 2219, 2228, 33 L.Ed.2d 131 (1972).

13. Based upon the reasoning of the foregoing cases, it is clear that the only constitutional right owed to Mr. McIntosh was his right to rent the facility from the city on an equal basis with the defendants, and there is no allegation that he was denied that access. He was not free to impose himself upon the listeners at the Appreciation Luncheon who had come to hear the Vice President of the United States.

14. Although the plaintiff complains that the actions taken by these defendants were on the basis of his race, the proof clearly shows that others of the black race were allowed admission to the Appre-

ciation Luncheon. While this fact is not conclusive on the issue of racial motivation, it is at least persuasive circumstantial evidence that race was not the deciding factor in the decision to exclude Mr. McIntosh. The evidence adduced on this point raises a requirement on the part of Mr. McIntosh to establish by direct or circumstantial evidence some basis for asking the Court to conclude that race was any factor in the decision of defendants. Absolutely no such evidence has been adduced by the plaintiff on that issue. It appears to the Court, and we so find, that the discrimination against Mr. McIntosh was purely against him as an individual and not because of his membership in any race or class. The Court finds no invidious class-based discrimination, as is required under 42 U.S.C. § 1983, which provides protection only for deprivations of constitutional rights and creates no independent tort liability on its own right.

■ 15. Plaintiff also raises the issues under 42 U.S.C. § 1981. In order to succeed the plaintiff must show purposeful discrimination on the basis of his race. *Washington v. Davis,* 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976); *Williams v. DeKalb County,* 582 F.2d 2 (5th Cir.1978); *Grigsby v. North Mississippi Medical Center, Inc.,* 586 F.2d 457 (5th Cir.1978); *Johnson v. Hoffman,* 424 F.Supp. 490 (E.D.Mo.), *aff'd* 572 F.2d 1219 (8th Cir.), *cert. denied* 439 U.S. 986, 99 S.Ct. 579, 58 L.Ed.2d 658 (1978).

16. In *Newton v. Kroger,* 83 F.R.D. 449, 454 (E.D.Ark.1979), Judge Arnold, now of the Eighth Circuit Court of Appeals, held that a plaintiff in order to succeed under § 1981 "must show subjective intent ..." To do so the plaintiff must do more than show merely that he was a member of the black race. The plaintiff must introduce evidence showing a deliberate intention on the part of the defendants or any of them to discriminate against him on the basis of his race. Thus, he may show "either by statistical evidence or by testimony of specific racially motivated incidents, that there is probable cause to believe that [the refusal to honor his ticket] ... was motivated in substantial part by race." *Newton v. Kroger, supra* at 454.

■ 17. There is no evidence in this case, direct or indirect, of specific racially motivated incidents, statistical evidence, or any other form of evidence which would support the plaintiff's allegation that the conduct of the defendants was purposeful and based upon his race. The claims under § 1981 must therefore fail.

■ 18. The plaintiff has also alleged causes of action under 42 U.S.C. §§ 1985 and 1986. It is clear that § 1985 provides a civil remedy for both public and private infringements of constitutionally protected rights. *Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). But § 1985 has clearly been limited to application in cases where the plaintiff is deprived of a constitutionally protected right or privilege, and where the act is based upon "some racial, or perhaps otherwise class-based invidiously discriminatory animus." *Griffin v. Breckenridge, supra* at 102, 91 S.Ct. at 1798. For the reasons set forth in the foregoing conclusions of law, the Court finds that there has been no showing of any class-based invidiously discriminatory animus on behalf of any of the defendants.

19. Further, the Court expressly finds that there has been no infringement of any constitutionally protected right by any of the defendants. There is therefore no basis for an action under § 1985.

■ 20. 42 U.S.C. § 1986 is a misprision statute and is derivative in nature. It is axiomatic that if the plaintiff is unable to state or prove a claim under § 1985, the derivative claim under § 1986 must fail as well. *Williams v. St. Joseph Hospital,* 629 F.2d 448 (7th Cir.1980); *Tollett v. Laman,* 497 F.2d 1231 (8th Cir.), *cert. denied* 419 U.S. 1088, 95 S.Ct. 678, 42 L.Ed.2d 680 (1974).

■ 21. In order to establish a cause of action for false arrest or malicious prosecution under the pendent tort claims raised in this cause of action, the plaintiff

is required to show that the police officers who effected the arrest were not acting in good faith and upon probable cause. *Perkins v. Cross*, 562 F.Supp. 85, 87 (E.D.Ark. 1983). This is true even though the police officer did not choose the wisest or most reasonable course of action that he could have taken under the circumstances.

22. As the Court has found, Mr. McIntosh was eventually acquitted of the charge of disorderly conduct. This, however, is not in and of itself sufficient to establish that any of the defendants acted "without probable cause."

23. Of course, with respect to the defendants other than the state police defendants, there has been no showing that they acted at all. The testimony of the police defendants was that they acted because they believed that the misdemeanor of disorderly conduct, as set forth in Ark.Stat. Ann. § 41–2908 (1977), was being committed in their presence. The Court finds no basis for concluding that their belief was not reasonable under the circumstances.

24. According to Arkansas law, the probable cause in the context of a false arrest or malicious prosecution case means "such a state of facts known to the prosecutor ... as would induce a man of ordinary caution and prudence to believe, and did induce the prosecutor to believe, that the accused was guilty of the crime alleged, and thereby caused the prosecution." *Malvern Brick & Tile Co. v. Hill*, 232 Ark. 1000, 1004–1005, 342 S.W.2d 305, 308 (1961).

25. The Court believes that the state police officers in this case acted in the good faith belief that they had probable cause to make the arrest of the plaintiff for disorderly conduct. That is a close question, but what convinces the Court is their forthright testimony, their courteous treatment of Mr. McIntosh and the fact that Mr. McIntosh did refuse their lawful order to leave the premises.

26. Even, however, if this court were to hold that the state police acted without probable cause, the plaintiff would never-

theless be required to show that they acted in bad faith. Nothing in the testimony of Mr. McIntosh or in any of the evidence adduced before this court indicates that these two police officers had any racial motivation, or that they harbored any ill will toward Mr. McIntosh, or that they acted in bad faith. The Court therefore finds that Mr. McIntosh failed to state a claim on the pendent false arrest cause of action.

Based upon the foregoing findings of fact and conclusions of law, none of the defendants deprived the plaintiff of any of his federally protected rights, nor did any of them violate any law. The Court therefore finds that Mr. McIntosh's claims should be dismissed with prejudice.