**Robert "Say" McINTOSH, Appellant,**

v.

**ARKANSAS REPUBLICAN PARTY–FRANK WHITE ELECTION COMMITTEE; Curtis Finch, Jr., Individually and as Campaign Chairman of the Frank White Re-election Committee; Arkansas State Police; Tommy Goodwin, Individually and as Director of the Arkansas State Police; North Little Rock City Police Dept.; Bill Younts, Individually and as Chief of North Little Rock Police Dept.; John Doe and Richard Roe, etc., Appellees.**

No. 84–1499.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 14, 1985.
Decided June 25, 1985.

Lay, Chief Judge, and Gibson, Circuit Judge, filed concurring opinions.

Theodore Shaw, New York City, for appellant.

Mary B. Stallcup, Little Rock, Ark., for Arkansas State Police.

James B. McHaney, Little Rock, Ark., for Curtis Finch, Jr.

Before LAY, Chief Judge, and JOHN R. GIBSON and FAGG, Circuit Judges.

FAGG, Circuit Judge.

Robert McIntosh appeals the dismissal of his civil lawsuit. McIntosh brought this lawsuit under the federal civil rights laws, 42 U.S.C. §§ 1981, 1983, 1985(3), and 1986. The lawsuit also involves pendent state-law claims of false arrest and false imprisonment. We affirm in part, reverse in part, and remand with instructions.

McIntosh, a black citizen of Little Rock, Arkansas, is a local political activist. On February 25, 1982, McIntosh purchased a ticket to the Frank White Appreciation Luncheon which was scheduled to take place the next day. Frank White was at that time the Governor of Arkansas and this luncheon was intended to raise funds for his re-election bid. Two private organizations, the Frank White Election Committee and the Arkansas Republican Party, sponsored the luncheon. Vice President George Bush was scheduled to be the luncheon's guest speaker.

After purchasing his ticket, McIntosh sent a letter to Governor White's office in which he unequivocally stated that he would speak at the luncheon. McIntosh's letter specifically requested that Governor White confirm his demand and further requested that he be told whether he would be scheduled to make his remarks before or after the Vice President's speech. When Curtis Finch, Jr., a private businessman and the individual in charge of the event, learned of this letter, he was understandably concerned, since McIntosh had not been invited to speak. His concern, however, stemmed not only from the fact that McIntosh intended to make an unsolicited speech but also from the fact that McIntosh was one of Governor White's most active and vocal opponents and had previously sent a number of harassing articles to Governor White. Further, Finch had no reason to question McIntosh's sincerity of purpose because McIntosh had, in the past, disrupted other events with unsolicited and often unwelcome speeches. Given these factors, Finch decided that McIntosh could not be allowed to disrupt and possibly ruin Governor White's luncheon. As a result, Finch determined that rather than allow McIntosh to attend, he would refund McIntosh the full purchase price of his ticket.

The luncheon was scheduled to be held in a banquet hall located in the Little Rock Convention Center. The convention center is owned and operated by the City of Little Rock, and the banquet hall in question is regularly and nondiscriminately made available to private groups seeking to use the hall for their private gatherings. On the day of the luncheon, McIntosh was on hand at the convention center. Prior to entering the banquet hall, McIntosh was approached by Finch. Finch informed McIntosh that he would not be allowed to attend and offered McIntosh a full refund. McIntosh refused and insisted that he had the right to attend. Finch repeatedly told McIntosh that he could not enter the banquet hall and McIntosh repeatedly refused any refund. Further, McIntosh did nothing to disclaim his intent to intrude upon the program and make an unsolicited speech.

As the exchange between Finch and McIntosh became more heated, two Arkansas state troopers who were assigned to provide security for the luncheon, and who had been warned that McIntosh might attempt to disrupt the event, identified themselves, informed McIntosh that he would not be allowed to attend the luncheon, and requested that he leave. The officers further told McIntosh that if he insisted on entering the luncheon he would be arrested. In response to this statement, McIntosh replied, "Well, take me to jail." The officers, taking McIntosh at his word, arrested McIntosh and took him to the North Little Rock jail where he was charged with disorderly conduct. After processing, which took approximately one hour and forty-five minutes, McIntosh was released on his own recognizance.

Several days later, McIntosh filed this lawsuit seeking compensatory and punitive damages totaling $2,000,000. McIntosh asserts a number of claims, but in general argues that defendants' actions were racially motivated and were intended to deprive him of his first amendment right of free speech. At the conclusion of the trial, the district court found that the defendants' actions were not racially motivated and that McIntosh had no constitutional right to speak at the private luncheon. The district court also found that the police had acted upon probable cause in arresting McIntosh. Consequently, the district court dismissed McIntosh's lawsuit.

We address only briefly McIntosh's appeal of the dismissal of his section 1981, section 1985(3), and section 1986 claims. For a party to succeed on either a section 1981 claim or a section 1985(3) claim, purposeful discrimination must be established. *General Building Contractors Association v. Pennsylvania*, 458 U.S. 375, 388–89, 102 S.Ct. 3141, 3148–49, 73 L.Ed.2d 835 (1982) (involving section 1981), and *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971) (involving section 1985(3) ). At trial, McIntosh presented no direct or circumstantial evidence to support his claim that defendants' actions were motivated by race. Instead, he offered only his own conclusory statements that defendants were out to get him because he was black. Contrary to McIntosh's assertions, the district court found that the defendants' actions were not racially motivated. *McIntosh v. White*, 582 F.Supp. 1244, 1250 (E.D. Ark.1984). In fact, the evidence presented at trial demonstrated that the luncheon was attended by a racially mixed audience. *Id.* at 1247. Because McIntosh failed to make a showing of racial discrimination, his section 1981 and section 1985(3) claims were properly dismissed. Further, because recovery under section 1986 is dependent on the existence of a claim under section 1985, McIntosh's section 1986 claim must also fail and was properly dismissed. *Mollnow v. Carlton*, 716 F.2d 627, 632 (9th Cir.1983).

We turn next to McIntosh's section 1983 claims. In the district court, McIntosh's section 1983 claims centered around three asserted constitutional deprivations. First, McIntosh asserted that defendants' actions denied him of his first amendment right of free speech. Second, McIntosh argued that the defendants' actions constituted false arrest and false imprisonment in violation of his fourth amendment right to be free from unreasonable searches and seizures. Third, McIntosh contended that defendants' actions were racially motivated and as such violated his constitutional right to equal protection under the law.

To succeed on these claims McIntosh must make two separate and independent showings. First, McIntosh must demonstrate that he was "deprived of a right 'secured by the Constitution and the laws' of the United States." *Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149, 155, 98 S.Ct. 1729, 1733, 56 L.Ed.2d 185 (1978) (quoting 42 U.S.C. § 1983). Second, McIntosh must show that the defendants "deprived [him] of this right [while] acting 'under color of any statute' of the State" of Arkansas. *Id.*

Initially, we reject as meritless McIntosh's claim that defendants' actions were racially motivated. The district court specifically found that a racially mixed audience attended the luncheon. *McIntosh*, 582 F.Supp. at 1247. Further, McIntosh failed to make any showing whatsoever of racial discrimination. *Id.* at 1250. Because McIntosh's section 1983 action based on race discrimination is patently without merit, we will not address it further and turn instead to McIntosh's assertion that the defendants' actions violated his first amendment right to free speech.

In the context of this claim, the district court found that the Frank White Appreciation Luncheon was a completely private fundraising event. *Id.* at 1246. The district court also found that McIntosh's purpose in attending this private event was to make a disruptive and unsolicited speech on some topic of his choice in front of Vice President Bush and Governor White. *Id.* at 1247, 1249. Although McIntosh makes no challenge to these findings, we have reviewed the record and conclude that the district court's findings are not clearly erroneous.

In order properly to focus our inquiry, we must identify the constitutional issue derived by McIntosh from these facts. McIntosh does not assert that he was denied the right to express his views in the public or common access areas of the convention center or that he was actually exercising his first amendment rights at the time he was arrested. McIntosh further does not claim that the privately sponsored luncheon was itself transformed into some

type of a public forum because it was held in the city's convention center. Rather, McIntosh's position throughout this litigation has been that the purchase of a ticket to the private luncheon afforded him the constitutionally protected first amendment right to interrupt the luncheon's agenda and to make an uninvited, unwanted, and unscheduled speech on some topic of his choice. We disagree.

The purchase of the ticket gave rise to no first amendment rights in the context of this case. The luncheon was in all respects private. The event was intended solely to generate money and enthusiasm for Governor White's re-election bid. Given these facts, McIntosh had no constitutional right to enter and disrupt this private event by unilaterally altering the sponsor's program and placing himself and his message upon the agenda. Simply stated, McIntosh was in no position to impose himself on the sponsors of the private event contrary to their wishes under the guise of exercising general rights of free speech. In pressing his lawsuit, McIntosh has failed to recognize that the Supreme Court has rejected the notion "that people who want to propagandize protest or views have a constitutional right to do so whenever and however and wherever they please." *Adderley v. Florida*, 385 U.S. 39, 48, 87 S.Ct. 242, 247, 17 L.Ed.2d 149 (1966). Because McIntosh has suffered no constitutional deprivation and therefore failed to meet the first prong of the *Flagg* test, his section 1983 action based upon the first amendment fails.

We turn next to McIntosh's section 1983 claim based upon false arrest. While this claim was pleaded and tried below, the district court did not make a ruling on this claim. Instead, the district court addressed McIntosh's claim of false arrest only in the context of his pendent state-law claims of false arrest and false imprisonment. While McIntosh has not specifically challenged the district court's failure to rule on this claim, certain passages in his brief convince us that he has not abandoned this claim. Given our disposition of McIntosh's pendent state-law claims of false arrest and false imprisonment, we conclude that this claim should be remanded to the district court for a new trial and a ruling on the merits.

[7] We turn finally to McIntosh's pendent state-law claims of false arrest and false imprisonment. At trial, the district court, relying on its prior opinion in *Perkins v. Cross*, 562 F.Supp. 85 (E.D.Ark. 1983) (a federal civil rights case), determined that to recover on his state-law claims McIntosh was "required to show that the police officers who effected the arrest were not acting * * * upon probable cause." *McIntosh*, 582 F.Supp. at 1251 (citing *Perkins*, 562 F.Supp. at 87). Under this standard, the burden of proving lack of probable cause was placed on McIntosh.

On appeal, McIntosh, although inartfully, challenges the legal standard of recovery applied by the district court. After carefully reviewing the record, the district court's opinion, and the applicable state law, we conclude that the district court incorrectly placed the burden of proving lack of probable cause on McIntosh. As a result, we reverse the district court's dismissal of McIntosh's state-law claims.

McIntosh's claims of false arrest and false imprisonment are state-law claims governed solely by Arkansas state law. Under Arkansas law, "[a]n essential element of the tort of false arrest, which is basically the same wrong as false imprisonment, is the unlawful detention of the plaintiff against his will." *Faulkinbury v. United States Fire Insurance Co.*, 247 Ark. 70, 444 S.W.2d 254, 255 (1969). Further, once the plaintiff establishes that he or she was restrained, "the burden [is] upon the defendant to show that [the detention] was by authority of law" or as here was made upon probable cause. *Wells v. Adams*, 232 Ark. 873, 340 S.W.2d 572, 574 (1960) (quoting *Missouri Pacific Railroad Co. v. Yancey*, 180 Ark. 684, 22 S.W.2d 408, 410 (1929)); *see also Pettijohn v. Smith*, 255 Ark. 780, 502 S.W.2d 618, 623 (1973). If the defendant is unable to carry this burden, plaintiff's claim has been es-

tablished and recovery of compensatory damages is appropriate.

Here, the district court improperly placed the burden of proving the absence of probable cause on McIntosh. This error requires reversal since the issue of probable cause is, as the district court recognized, a close one. Because of the closeness of this question, the allocation of the burden of proof takes on particular importance. As such, we reverse the district court's disposition of McIntosh's state-law claims and remand these claims to the district court for reconsideration in light of this opinion. We do so, however, with the proviso that the district court may, in its discretion, hear further testimony if necessary.

In conclusion, we affirm the district court's decision with respect to all of McIntosh's federal claims, except for McIntosh's section 1983 claim based upon false arrest. This claim is remanded to the district court for a ruling on the merits. We reverse the district court's dismissal of McIntosh's pendent state-law claims of false arrest and false imprisonment and remand these claims to the district court for reconsideration in light of this opinion. We note finally that this reconsideration will involve only defendants Reinold and Phillips, who were the two officers who arrested McIntosh.

Affirmed in part, reversed in part, and remanded with instructions.

LAY, Chief Judge, concurring.

In my judgment it is factually clear the state police officers lacked probable cause to arrest McIntosh for disorderly conduct. I would so hold that there existed no probable cause to arrest McIntosh as a matter of law. At the time of his arrest, McIntosh was standing in a public access area of a public building. The uncontradicted testimony at trial revealed that McIntosh was neither loud nor disruptive prior to his arrest, and that he did not use abusive or profane language when requesting entrance to the luncheon. The district court conceded that the probable cause issue was

a "close question," but stated it was convinced by the officers' "forthright testimony, their courteous treatment of Mr. McIntosh and the fact that Mr. McIntosh did refuse their lawful order to leave the premises." I cannot accept the court's reasoning. McIntosh had every right to be in the public hallway, and therefore the officers' order to leave the premises was not "lawful." In fact, McIntosh had paid $125.00 for a ticket to attend the luncheon. The officers' conduct in arresting, handcuffing, and hauling McIntosh to the North Little Rock Police Station (although he was arrested in Little Rock) where he was jailed, interrogated, and detained for over two hours until the luncheon was over, can hardly be termed "courteous." Finally, although the officers' testimony may indeed have been forthright, I fail to see how the officers' testimony that McIntosh "was not loud or disruptive at any time prior to his arrest" lends support to the district court's erroneous finding that probable cause existed to arrest McIntosh for disorderly conduct. Under these circumstances, I would also hold that the officers' conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known," thus depriving the officers of the defense of qualified immunity. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

JOHN R. GIBSON, Circuit Judge, concurring.

I concur in the court's opinion today but I write separately only because Chief Judge Lay has expressed his view that it is factually clear that the police officers lacked probable cause to arrest McIntosh for disorderly conduct. I read the record to demonstrate probable cause. Probable cause for an arrest simply requires that an officer have enough facts or circumstances to justify a prudent person in believing that an offense is about to be committed. *Michigan v. DeFillippo,* 443 U.S. 31, 37, 99 S.Ct. 2627, 2632, 61 L.Ed.2d 343, 349 (1979).

Disorderly conduct is defined as disrupting or disturbing any lawful assembly or meeting of persons with the purpose to cause public inconvenience, annoyance or alarm or recklessly creating a risk thereof. Ark. Stat.Ann. § 41–2908 (Repl.1977).

The officers knew that McIntosh had established a pattern of disrupting previous meetings. When he came to the luncheon he was dressed in an uncharacteristic manner, and they had been informed that McIntosh had written a letter to the Governor stating that he intended to speak at the luncheon. When the chairman of the luncheon, Finch, approached McIntosh and told him that his ticket was purchased illegally and that he would not be permitted to enter and that his money would be refunded, McIntosh answered "I've got my ticket. I am going to enter." He repeated the statement in response to Finch two or three times. At this time Sergeant Reinold identified himself and told McIntosh that he was not being allowed into the private function and had been asked to leave and McIntosh told him "I've got my ticket. I'm going in." McIntosh refused a second and third request by Reinold to leave. Reinold stated that McIntosh became agitated and his voice was rising, although it did not get to the point of loud shouting. He stated that in his opinion the situation was approaching a point where it could get out of hand. He stated that McIntosh's speech was that of not normal demeanor. McIntosh became very anxious and began speaking quickly. His voice rose from a normal conversation but it did not get to the point of loud shouting. Reinold felt that McIntosh was going to lose control or could possibly lose control and told him that they were going to place him under arrest. He left with the officers in an orderly manner and the officers thanked him for doing so.

In my view this evidence is sufficient to satisfy the officers' burden that they had probable cause for believing that an offense of disorderly conduct was about to be committed.