**Jeffrey Thomas WILSON, Appellee,**

v.

**Lt. Clifton LAMBERT and Sgt. W.F. Straughn, Employees, Cummins Unit, Arkansas Department of Correction, Appellants.**

**No. 85–1379.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 12, 1985.

Decided May 2, 1986.

* The HONORABLE JOHN K. REGAN, Senior United States District Judge for the Eastern District of Missouri, sitting by designation.

Randel Miller, Asst. Atty. Gen., Little Rock, Ark., for appellants.

Richard Quiggle, Little Rock, Ark., for appellee.

Before ARNOLD and WOLLMAN, Circuit Judges, and REGAN,* Senior District Judge.

WOLLMAN, Circuit Judge.

Jeffrey Thomas Wilson, formerly an inmate at the Cummins Unit of the Arkansas Department of Correction, commenced this suit for damages under 42 U.S.C. § 1983 against two of the Department's correctional officers, Clifton Lambert and W.F. Straughn, alleging that he had been beaten by them. An evidentiary hearing was held before a United States magistrate. After hearing the evidence the magistrate recommended to the district court [1] that Wilson's complaint be dismissed. Wilson petitioned the district court for the appointment of counsel and a second hearing on the merits of his complaint. The district court granted Wilson's petition, conducted a hearing, and found that Lambert and Straughn, acting under color of state law, had intentionally and without justification inflicted bodily harm on Wilson. The district court awarded Wilson $3,000 compensatory damages. Lambert and Straughn appeal, arguing that the district court's findings of fact are clearly erroneous. We disagree and

1. The Honorable George Howard, Jr., United States District Judge for the Eastern and Western Districts of Arkansas.

therefore affirm the judgment of the district court.

## I.

Wilson testified that at about 9:00 on the evening of October 12, 1983, he was resting on the bunk in his barracks when two of his cell mates confronted him and expressed a desire to engage in homosexual activities. Wilson strenuously objected, and the matter ended without incident. Before departing, however, the inmates indicated to Wilson that resistance on his part would not be tolerated in the future. Wilson immediately reported the incident to Straughn, the barracks wing sergeant, and asked to speak with the duty lieutenant about a barracks transfer. Straughn agreed to Wilson's request and escorted him to the hall desk.

At the hall desk Wilson met with Lambert, the duty lieutenant. Wilson testified that he explained to Lambert that he wanted to transfer because he was being harrassed by two inmates in his barracks about homosexual acts. Lambert asked him to identify the two inmates. Wilson refused to do so, fearing retaliation from the two inmates if they were punished. Lambert ordered Wilson to return to his barracks. Wilson refused to do so, whereupon he was escorted by Lambert and Straughn, who was armed with a nightstick some two feet in length, back toward his barracks.[2] Wilson testified that when they arrived at the riot gate separating the barracks from the hall desk area, he grabbed the bars and refused to proceed any farther. He was then struck on the face two or three times by Lambert. The force of these blows knocked Wilson to the floor. While lying on the floor, he was kicked several times by Straughn. Wilson was pulled to his feet and taken to another hallway, where once again he was struck on the face two or three times by Lambert. Following a brief visit to the infirmary, Wilson was placed in the disciplinary barracks, where he remained for the next 30 days.

Wilson testified that as a result of the beating he suffered a bloody nose, a painful neck injury, and two cracked front teeth. After he was released from the disciplinary barracks, Wilson went to the prison dentist, who extracted the damaged teeth and replaced them with a bridge.

The testimony of Lambert and Straughn can be summarized as follows: Wilson refused to provide either of them with specific details surrounding the incident with the two inmates in his barracks, saying only that he was having a problem and thus wanted to transfer. Under these circumstances, Lambert had no choice but to deny Wilson's request. Wilson refused to return to his barracks when ordered to do so by Lambert. It was thus necessary for Lambert and Straughn to escort him. When they came to the riot gate, Wilson suddenly and without provocation turned and struck Lambert in the right side with his right hand. Lambert reacted instantaneously, striking Wilson a single time on the face. Lambert and Straughn then wrestled Wilson to the floor and handcuffed him. Wilson was then escorted back to the hall desk. A short time later another correctional officer, who was not involved in the incident, took Wilson to the prison infirmary.

Straughn testified that as barracks wing sergeant he has the responsibility of screening inmate complaints. He brings to the attention of his supervising officer only those complaints which he believes are serious. In Wilson's case, Straughn concluded that the better part of discretion was to notify Lambert of the complaint. Lambert, on the other hand, testified that he felt Wilson's complaint lacked substance inasmuch as Wilson had refused to provide him with details of the incident in the barracks. Lambert also testified that his actions were consistent with prison policy to transfer inmates only upon a showing of good cause.

The record reveals that Lambert is 5'11", 260 lbs; Straughn is 6'0", 180 lbs. Wilson is 5'4", 145 lbs.

**2.** Lambert could not recall whether he was carrying his nightstick at the time.

The testimony of Wilson, Lambert, and Straughn constituted the primary evidence, for the only other testimony, that of two other inmates, was inconclusive. The district court was thus faced with a classic case of determining credibility. The trial judge chose to believe Wilson, finding that the officers had used unnecessary and unjustified force and had administered a beating that resulted in the infliction of bodily harm without just cause. The court characterized as wanton the force used by the officers. The court found that Wilson had sustained a bloody nose, an injury to his neck resulting in pain, and damage to his two front teeth that necessitated their subsequent extraction.

## II.

We undertake our review of appellants' challenge to the trial court's findings with the recognition that our standard of review is narrowly circumscribed by the command of Rule 52(a) of the Federal Rules of Civil Procedure, which directs that findings of fact shall not be set aside unless clearly erroneous. The Supreme Court has recently discoursed on the meaning of the "clearly erroneous" standard of Rule 52(a):

> When findings are based on determinations regarding the credibility of witnesses, Rule 52 demands even greater deference to the trial court's findings; for only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said.

*Anderson v. City of Bessemer City,* ——
U.S. ——, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985). The Court was quick to add, however, that credibility determinations are not sacrosanct:

> This is not to suggest that the trial judge may insulate his findings from review by denominating them credibility determinations, for factors other than demeanor and inflection go into the decision whether or not to believe a witness. Documents or objective evidence may contradict the witness' story; or the story itself may be so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it. Where such factors are present, the court of appeals may well find clear error even in a finding purportedly based on a credibility determination.

*Id.* at 1512–1513.

In the absence of such impeaching evidence, however, a finding based upon a credibility determination is virtually unassailable.

> But when a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error.

*Id.* at 1513.

With this standard of review in mind, we turn, then, to appellants' attack upon the trial court's findings.

Lambert and Straughn argue that the documentary evidence introduced at trial discredited Wilson's testimony to the point that it was unworthy of belief. Wilson introduced his medical records in an effort to discredit Lambert's testimony that he had been struck by Wilson's right hand. These records indicate that on August 31, 1983, Wilson had fractured his right hand while playing football. As a result, he was instructed not to use his right hand for the next six weeks, the expiration date of this restriction being noted as October 14, 1983. The district court noted this evidence in connection with its finding that Wilson did not strike Lambert as both Lambert and Straughn claimed he had. Lambert and Straughn challenge this finding, pointing out that because six weeks from August 31, 1983, is actually October 12, 1983, Wilson's hand was fully healed as of the day of the incident. They assert that it was thus clear error for the district court to rely on this evidence in discrediting their testimony.

We regard this argument as a mere quibble. Although the medical records certain-

ly do not constitute unequivocal evidence that Wilson could not have struck Lambert with his right hand, this evidence was not the sole basis for the district court's findings on this issue. The district court took into account the fact that Straughn was armed with a nightstick. The court also noted the disparity in the size and weight of Wilson and the two officers. It was not illogical for the district court to infer that Wilson would not launch what would obviously have been a futile assault on Lambert.

Lambert and Straughn also assert that the district court's finding that Wilson's teeth were damaged by them is inconsistent with the medical evidence. The infirmary records for the night of October 12, 1983, indicate that Wilson complained of and was treated for a bloody nose and neck injury; but there is no indication in these records that Wilson received any treatment for an injury to his teeth. Lambert speculated at trial that Wilson most likely sustained this injury in a fight with another inmate during Wilson's confinement in the disciplinary barracks. Wilson, however, testified that he had complained to the infirmary attendant about his teeth. He also testified that he had complained about his teeth throughout his stay in the disciplinary barracks. He was not allowed to see a dentist during this time, however, though he did receive medication to lessen the pain.

The district court accepted Wilson's explanation. Neither Lambert nor Straughn was present at the infirmary when Wilson was cursorily examined and treated. The person who conducted the examination and provided the treatment was not called to testify, nor was the correctional officer who escorted Wilson to the infirmary. Accordingly, we do not find the discrepancy between Wilson's testimony and the infirmary records so glaring as to render suspect the trial court's findings on this issue.

That we as members of an appellate court might take Wilson's testimony with several grains of salt is beside the point, for the Supreme Court reminded us in *Anderson* that the standard of Rule 52(a)

does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently. The reviewing court oversteps the bounds of its duty under Rule 52 if it undertakes to duplicate the role of the lower court.

*Id.* at 1511.

### III.

Contending that this appeal is frivolous, Wilson asks for double costs and attorneys' fees pursuant to Rule 38 of the Federal Rules of Appellate Procedure. We do not agree, and we therefore deny the request.

The judgment is affirmed.