**Wardell WASHINGTON, Appellant,**

v.

**Walter SIMPSON, Chief of Police; and Phillip White; John Ball, and John Fink, Officers, Little Rock Police Department, Little Rock, Arkansas; The City of Little Rock; The Little Rock Police Department, Appellees.**

No. 85–2471.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 11, 1986.

Decided Nov. 26, 1986.

Horace A. Walker, Little Rock, Ark., for appellant.

Victra L. Fewell, Little Rock, Ark., for appellees.

Before ROSS, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and WOLLMAN, Circuit Judge.

ROSS, Circuit Judge.

Wardell Washington appeals from the district court's[1] ruling entered in favor of defendants, Little Rock Police Officers John Fink, John Ball and Phillip White.[2] Washington brought this action under 42 U.S.C. §§ 1981 and 1983 (1982), and also under a corresponding pendent state tort law alleging his fourth and fourteenth amendment rights were violated as a result of an unlawful arrest and unlawful entry into his place of residence. The district court issued a ruling from the bench in favor of the defendants holding that none of appellant's constitutional rights had been violated. We affirm the district court's decision.

I.

Appellee Officer John Fink of the Little Rock Police Department's Warrants Division testified that on September 16, 1981 he was notified by Pam Ball of the Arkansas Parole Department that Sharon Inmon had an outstanding parole violation. Officer Fink already had two Little Rock warrants for Inmon and had confirmation that the Benton Police Department had an active burglary warrant for her. Ms. Ball advised Officer Fink that she had information that Inmon was residing at 1802 Summit, Little Rock, with appellant Wardell Washington.

Officer Fink, along with Officers Ball and White, went to 1802 Summit to serve the three warrants on Inmon. Officer Fink testified he knocked on the front door, loudly identified himself as a police officer, and finding the door slightly ajar, forcefully swung it open to be sure no one was hiding behind it. Officers Fink and White then entered the residence and found Wardell Washington lying on a bed in a back bedroom. Officer Fink asked Washington, "Where's Sharon?" at which appellant responded, "Sharon who?". Officer Fink testified that at this time he observed the lower half of the body of a white female, later identified as Sharon Inmon, protruding from under the bed. Officer Fink testified that he then showed Inmon the two warrants for her arrest, advised her of the third warrant and took her into custody. Officers Fink and White testified that Washington followed them to the front porch, speaking to them in a loud, abusive manner, whereupon Washington was arrested for hindering the apprehension of a fugitive.

The testimony of appellant Washington is in marked contrast to that of the appellee officers. Washington testified that Of-

---

1. The Honorable George Howard, Jr., United States District Judge for the Eastern District of Arkansas.

2. Washington also alleged constitutional violations on the part of the City of Little Rock, the Little Rock Police Department and Chief Walter E. Simpson. The district court granted motions for directed verdict in favor of these defendants, but Washington does not appeal that portion of the district court's decision.

ficers Fink and White, without knocking or otherwise making their presence known, forcefully kicked open the front door to his residence, damaging the lock and door facing. Washington testified that contrary to Officer Fink's testimony, Inmon was not attempting to conceal herself beneath Washington's bed, but instead was sitting at the foot of the bed when the officer entered the room. Washington testified that he followed the officers to the front porch, inquiring as to the damage to his door, to which Officer White responded that Washington had better "shut up" or he would be charged with harboring a fugitive. Washington further testified that Officers White, Ball and Fink addressed him with abusive language and racial slurs.

Washington was arrested and subsequently charged with hindering the apprehension of a fugitive. The hindering charge was later nolle prossed as Washington's federal parole had already been revoked for abuse of illicit drugs while on parole, associating with known felons, and violating the law by hindering the apprehension of a fugitive.

Washington subsequently filed suit against Little Rock Police Officers Fink, Ball and White alleging violations of 42 U.S.C. §§ 1981 and 1983 stemming from his unlawful arrest and the unlawful entry into his place of residence. Washington now appeals the district court's ruling in favor of appellees, challenging the court's finding that Washington's arrest was in good faith and supported by probable cause, that his arrest was not racially motivated and that the entry into his place of residence was authorized by an arrest warrant for Sharon Inmon, a resident therein. We do not believe these factual findings are clearly erroneous and therefore affirm the district court's decision.

II.

Washington first argues the district court erred in finding that Washington's arrest on the charge of hindering the apprehension of a fugitive was made in good faith and supported by probable cause. Construing appellant's complaint liberally, appellant alleged both a fourth amendment violation actionable under 42 U.S.C. § 1983, as well as a pendent state tort claim of false arrest.

■ We will initally consider the state law claim which is governed solely by Arkansas state law. Under Arkansas law, once a plaintiff demonstrates that he has been detained against his will, the burden shifts to the defendant to show the detention was by authority of law. *McIntosh v. Arkansas Republican Party—Frank White Election Committee,* 766 F.2d 337, 341 (8th Cir.1985). The Supreme Court of Arkansas has held that "where the arrest is without a warrant, if the imprisonment is proved or admitted, the burden of justification is on the defendant." *Pettijohn v. Smith,* 255 Ark. 780, 783, 502 S.W.2d 618, 621 (1973). The test for lawful arrest under both Arkansas and federal constitutional law is similarly grounded on the existence of good faith and probable cause. Under Arkansas law, a police officer "may arrest a person without a warrant if the officer has reasonable cause to believe that such person has committed (iii) any violation of law in the officer's presence." ARK.STAT.ANN. Vol. 4A, Rules of Crim. Proc., Rule 4.1(a)(iii) (Repl.1977). The Arkansas Supreme Court has stated that "reasonable cause" is synonymous with "probable cause," *Gaylor v. State,* 284 Ark. 215, 217, 681 S.W.2d 348, 349 (1984) and has held that probable cause exists where "the facts and circumstances within the arresting officer's knowledge, and of which he had reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." *Id.* The issue is not whether there is sufficient evidence to sustain a conviction, but rather whether there is sufficient evidence for the police officers to believe, in good faith, that they had probable cause to make the arrest.

In the case before us, it is undisputed that Washington's arrest constituted an involuntary detention. Having thus con-

ceded, the burden of proof then shifts to the defendant officers to prove lawful justification for the arrest. In order to sustain this burden, the officers testified that Washington was arrested for hindering the apprehension of a fugitive based on the evidence that Sharon Inmon was a wanted person, that she was hiding under appellant's bed with his knowledge, and that appellant responded "Sharon who?" when asked where Sharon was. The officers testified that they interpreted this evidence as an obvious attempt to mislead them or to volunteer false information in order to prevent the apprehension of Inmon.

The trial court properly allocated the burden of proving justification for the arrest to the appellee officers. Notwithstanding appellant's contention to the contrary, the trial court credited the testimony of the arresting officers and found that Inmon was attempting to conceal herself under appellant's bed. Relying on ARK. STAT.ANN. § 41–2805(1)(a) (Supp.1985), which prohibits a person from "harbor[ing] or conceal[ing]" a person sought by police, and § 41–2805(1)(f) (Supp.1985) which prohibits a person from "volunteer[ing] false information to a law enforcement officer" in order to aid a fugitive, the district court concluded that Inmon's attempt to conceal herself in appellant's room, with his knowledge, coupled with appellant's assertion of ignorance regarding Inmon's whereabouts, constituted reasonable belief by the officers that Washington was attempting to hinder the apprehension of Sharon Inmon in violation of Arkansas law.

The district court's finding is primarily grounded on a factual determination of credibility of witnesses, and as such this court must afford great deference to these findings. Our standard of review is narrowly circumscribed by Rule 52(a) of the Federal Rules of Civil Procedure which mandates that in cases tried to the court, findings of fact shall not be set aside unless clearly erroneous. When findings are based on determinations regarding the credibility of witnesses, Rule 52 demands even greater deference to the trial court's findings, and in fact, unless contradicted by extrinsic evidence or internally inconsistent, such findings can virtually never be clear error. *Anderson v. City of Bessemer City,* 470 U.S. 564, 105 S.Ct. 1504, 1513, 84 L.Ed.2d 518 (1985); *Wilson v. Lambert,* 789 F.2d 656, 658 (8th Cir.1986). Under this rigorous standard we are unable to hold that the district court's findings were clearly erroneous.

■ Appellant also sets forth a section 1983 claim, contending his arrest, having not been based on probable cause, violated his fourth and fourteenth amendment rights. The district court incorrectly reviewed appellant's false arrest claim as presenting only a pendent state tort claim and therefore failed to make a specific finding on the section 1983 issue. Appellant cites *McIntosh v. Arkansas Republican Party, supra,* wherein this court remanded the section 1983 false arrest claim for the district court's failure to make a ruling on that claim, instead addressing only the pendent state law claim. *McIntosh,* however, is distinguishable from the case before us. In *McIntosh,* the district court not only failed to address the section 1983 false arrest claim but also failed to properly allocate the burden of proof on the state claim to the defendant police officers, as required by Arkansas law. This error is not present in the instant case. Here, the trial judge correctly placed the burden of proof on the defendant officers and found that adequate probable cause existed to support the arrest.

The standard for determining lawful arrest under both the section 1983 [3] and the Arkansas tort claim is centered on the issue of good faith and probable cause. Here, the district court based its findings on the credibility of the arresting officers'

---

**3.** The United States Constitution permits "an officer to arrest a suspect without a warrant if there is probable cause to believe that the sus-pect has committed or is committing an offense." *Michigan v. DeFillippo,* 443 U.S. 31, 36, 99 S.Ct. 2627, 2631, 61 L.Ed.2d 343 (1979).

testimony and found the officers had both probable cause and a good faith belief upon which to base the arrest. Having satisfied the standard for lawful arrest under both federal and state law there would be no purpose served in remanding the section 1983 claim for additional findings and conclusions.

III.

■ Washington also argues that the officers' entry into his home without permission constituted a violation of his rights under the fourth and fourteenth amendments to be free from unreasonable searches. The district court, however, dismissed Washington's claim holding, *inter alia,* that 1) Washington had no standing to raise a fourth amendment issue; 2) that appellant had no expectation of privacy; 3) that exigent circumstances existed so as to justify a warrantless entry; and 4) that no search had been conducted. The record, however, clearly demonstrates that Washington resided at 1802 Summit and as such had an expectation of privacy in the premises and standing to present a fourth amendment claim. The record further indicates that the officers' entry for the purpose of locating and arresting Sharon Inmon constituted a "search" with possible fourth amendment ramifications. Finally, the record is void of evidence indicating exigent circumstances which would justify a warrantless entry into appellant's home.

■ Although we do not agree with several of the district court's rulings, we believe that the court's ultimate determination on the issue of unlawful entry was correct. The district court concluded that

the entry into Washington's residence was constitutionally authorized by the existence of arrest warrants for Sharon Inmon, who was also found to be a resident of the premises. The district court's legal conclusion is buttressed by the United States Supreme Court's holding in *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), wherein the Court held that "for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Id.* at 603, 100 S.Ct. at 1388.

Based on the evidence presented at trial, the district court found that three arrest warrants were in existence for Inmon at the time of her arrest[4] and that Inmon resided with Washington at 1802 Summit. The court based the residency determination on evidence including the testimony of John Washington, appellant's brother, that Inmon stayed at 1802 Summit two to four nights a week and that she kept clothing and other personal belongings at this address. Moreover, Inmon herself gave 1802 Summit as her home address when she was booked into the Little Rock Detention Center. We do not consider the district court's findings to be clearly erroneous and therefore affirm the district court's holding.

IV.

■ Finally, appellant contends that his arrest and charge of hindering the apprehension of a fugitive was racially motivated and as such, a violation of 42 U.S.C. § 1981 (1982).[5] In order to succeed on his section

---

4. Appellant's argument that the entry was unlawful because the arresting officers failed to produce the warrants at the time of the arrest is irrelevant in light of *United States v. Clifford,* 664 F.2d 1090 (8th Cir.1981), wherein this court held that federal constitutional law does not require the actual possession of a warrant if the arresting officer has knowledge of its existence. *Id.* at 1093 n. 6, *citing United States v. West,* 517 F.2d 483, 485 (8th Cir.), *cert. denied,* 423 U.S. 948, 96 S.Ct. 365, 46 L.Ed.2d 283 (1975).

5. All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
42 U.S.C. § 1981.

1981 claim, Washington had the burden of proving that his arrest was motivated by purposeful discrimination. *General Building Contractors Assn. v. Pennsylvania,* 458 U.S. 375, 391, 102 S.Ct. 3141, 3150, 73 L.Ed.2d 835 (1982). At trial Washington offered into evidence only his own testimony that defendant police officers had called him "nigger" and told him he was being arrested for "being in the presence of a white woman." Noting that even Washington's own witnesses who were present during the incident testified they did not hear racial comments made by the officers, the district court credited the testimony of the officers that the racial statements had not been made, and dismissed Washington's section 1981 claim. We do not believe this finding was clearly erroneous and therefore conclude the section 1981 claim was properly dismissed.

## V.

In summary, we agree with the district court's findings that Washington's arrest was made in good faith, was supported by probable cause, and was not motivated by racial animus. We also agree with the determination that the entry into appellant's home was proper in order to effectuate the arrest of Sharon Inmon. Accordingly, the order of the district court is affirmed.